*In re* CAWLEY.

PEOPLE *v.* CAWLEY.

1. PARDON—CRIMINAL LAW—PAROLE—CUSTODY.
   A person who is on parole from imprisonment for crime is deemed in custody.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  39 Am Jur, Pardon, Reprieve and Amnesty § 93.
[2]  29 Am Jur, Insane and Other Incompetent Persons §§ 46–48.
[3]  14 Am Jur, Criminal Law §§ 6, 32 *et seq.,* 214 *et seq.*
     29 Am Jur, Insane and Other Incompetent Persons § 50.
[4]  29 Am Jur, Insane and Other Incompetent Persons § 50.

2. INSANE PERSONS—DISCHARGE FROM HOSPITAL.

A person who has been committed to a mental hospital may be discharged by virtue of an adjudication of sanity or by reason of discharge by the medical superintendent of the hospital upon a finding by the superintendent that the discharge shall not be detrimental to the public nor detrimental to the patient (CL 1948, § 330.35a; CLS 1956, § 330.39).

3. CRIMINAL LAW—INSANE PERSONS—JURISDICTION.

The fact that a person was adjudged mentally ill at some time previous to the date claimed in an information when a felony was committed does not oust the court of jurisdiction since a petition may be filed in a criminal prosecution by the accused, his attorney, or the prosecuting attorney to determine the capacity of the accused to aid and assist in the defense, and the question of insanity, either at the time of the alleged offense or at the time of the trial, is presented for inquiry and determination by a jury or other trier of the facts (CL 1948, § 767.27, as amended by PA 1961, No 166).

4. INSANE PERSONS—DISCHARGE FROM HOSPITAL—CRIMINAL LAW.

One who is discharged from a hospital where he was being treated for mental illness became accountable for any felony or crime he might commit and subject to the court's determination of guilt or innocence of those charged with crime, hence, would not be illegally held in custody under sentence duly imposed therefor (CL 1948, § 330.35a; CLS 1956, § 330.39; CL 1948, § 767.27, as amended by PA 1961, No 166).

Habeas corpus by Blanch Nowak, in behalf of her son, Robert J. Cawley, directed to the warden of State Prison of Southern Michigan, with alias writ to medical superintendent of Ionia State Hospital, and with accompanying writs of certiorari to Alton H. Noe, circuit judge, Macomb county, Joseph V. Trombley, probate judge, Macomb county, and Thomas C. Murphy, probate judge, Wayne county, to test validity of his sentence on charge of violation of probation. Prisoner released on parole during proceedings. Submitted November 9, 1962. (Docket No. 49,785.) Writ dismissed April 5, 1963.

*Blanch Nowak, in propria persona.*

*Frank J. Kelley,* Attorney General, *Eugene Krasicky,* Solicitor General, *James R. Ramsey,* Assistant Attorney General, for the people.

KELLY, J.   Blanch Nowak, on behalf of her son, Robert J. Cawley, filed petition for writ of habeas corpus.   This petition will be determined considering Robert J. Cawley as "in custody" in conformity with the recent United States supreme court decision of *Jones* v. *Cunningham, Penitentiary Superintent,* 371 US 236 (83 S Ct 373, 9 L ed 2d 285).

Robert J. Cawley pleaded guilty (January 24, 1956) to an information filed in the Macomb county circuit court charging forgery, and was sentenced to 5 years probation.

In 1959 Cawley was charged with violation of his probation.   Circuit Judge Alton J. Noe sentenced him to a minimum of 4 years and a maximum of 14 years, with a recommended minimum, and at the time of sentence filed a report, stating:

"It is the recommendation of this court, of course, that initially this man should be given some psychiatric examination to satisfy the prison psychiatrist as to possible handling.

"It is for this reason that some of the background is given in this summary so that a proper evaluation can be made."

The background furnished by Judge Noe in his report is as follows:

"This individual has been a source of a great deal of difficulty over a long period of time.   He has been on probation since February of 1956, at which time he pleaded guilty to a charge of uttering and publishing, which was the outgrowth of an incident in which he stole several company checks together with a check writer and proceeded to cash them.   He had

obtained this employment originally as a draftsman to gain entry into the company's office.

"He gives a history of some maladjustment during the war and as a result has been in and out of veteran hospital as a mentally ill person. It is the belief of the probation department, confirmed by contacts with the V.A. administration at Battle Creek, that when the going gets real rough for him he retreats to the Battle Creek facilities, there to claim a haven from whatever police officers may be looking for him. It is the belief of this court that excessive drinking is one of the factors which brings about his brushes with the law, which are becoming more serious as time goes on.

"We have had a great deal of sympathy for him, some of which was perhaps misplaced because of his war service, but in the main it is because of his large family and patient wife, that we have gone along with him on several occasions.

"The present violation hearing included a charge that he was wanted by Grosse Pointe Woods police department for issuing no account checks, that he had been drinking heavily, that he is wanted in Detroit for investigation for B & E, which complaint indicated that the police department had enough evidence to request a warrant and that he is presently wanted for failure to appear for trial by jumping bond.

"On other occasions his wife has been very cooperative and has contacted the probation officer on occasions when he started his heavy drinking, and in many instances the probation officer was able to ward off his further brushes with the law. Presently, however, he has become so involved with his drinking that there seems to be no halting him except to put him under close supervision.

"This man will put on a great emotional display and will thus try to enlist sympathy and persuade his listeners that he is incapable of controlling his emotions. To that end he immediately pleaded guilty to the probation violation and requested treatment

at the Ionia State Hospital. He has been pampered and treated with kid gloves so long that he will know all the answers and will no doubt be able to furnish suitable answers to a psychiatrist, who most likely will want to look into his background."

While in Jackson prison Cawley set fire to a dwelling house at Cassidy lake. He was charged with such offense, and, upon examination, was committed to the Ionia State hospital until such time as he might recover sufficiently to aid in his defense. After his release from the Ionia State hospital he was furnished with an attorney and later entered a plea of *nolo contendere* to the charge of setting fire to the dwelling. Following this plea he was sentenced by the Washtenaw circuit court to serve a term of from 2-1/2 to 20 years, the sentence to run from the date of the fire concurrently with his other sentence.

September 21, 1962, Cawley was released from prison confinement and the following appears on the record and files in the department of corrections, "In the case of Robert Cawley, B-100678":

"This is to certify that subject was paroled from the State Prison of Southern Michigan, Jackson, September 21, 1962, for a period of 2 years, the expiration of the parole period to be September 21, 1964. This parole is on 2 sentences, one imposed in Macomb county June 18, 1959, for a term of 4 to 14 years for uttering and publishing, and one imposed in Washtenaw county June 25, 1962 (sentence to become effective as of June 27, 1960) for a term of 2-1/2 to 20 years for arson."

Petitioner, claiming the circuit court of Macomb county lacked jurisdiction, states:

"The probate court of Wayne county being a court of competent jurisdiction (CL 1948, § 701.19 [Stat Ann 1943 Rev § 27.3178(19)]), and empowered by statute (CL 1948, § 701.20 [Stat Ann 1943 Rev

§ 27.3178(20)]) to hear and decide the petition of a Mrs. Robert J. Cawley, praying that the said Robert J. Cawley be committed to a State hospital as a mentally ill person.  Whereupon the said court after due notice and hearing of the said petition, and the filing of 2 certificates by legally qualified physicians, and after a full investigation of the said matter, ordered and decreed that the said Robert J. Cawley be committed to the Ypsilanti State hospital on the 20th day of April, A.D. 1950, as a mentally ill patient in need of care and treatment.

"Petitioner now says and states as a matter of fact, that no declaration of sanity has since been made, in compliance with the statute (CL 1929, § 6906*).  Therefore the said commitment by the said probate court of Wayne county, not having been set aside, vacated, annulled or superseded by any other court of competent jurisdiction, the said commitment still remains in full force and effect at law.    *    *    *

"Petitioner now respectfully submits that the judgment had against the said Robert J. Cawley, in criminal cause No. 5606, by the circuit court of Macomb county, on the 18th day of June, A.D. 1959, was, and is, null and void at law.  For it was rendered without jurisdiction of the person of the said Robert J. Cawley."

The record of Cawley's hospitalization for mental illness follows:

(1) Cawley was adjudged mentally ill by Wayne county probate court and was committed to Wayne County General Hospital and Infirmary.  The file fails to disclose what happened subsequent to commitment (April 20, 1950).

(2) November 26, 1954, petition was filed in Macomb county probate court alleging Cawley mentally ill.  On January 19, 1955, after a hearing,

---

* See quotations from sections of the current statute, CL 1948, § 330.39, *post.*—REPORTER.

Cawley was committed to the Veterans' Administration hospital as a mentally ill person. He was discharged from that hospital on May 9, 1955, with maximum benefits.

CLS 1956, § 330.39 (Stat Ann 1956 Rev § 14.829), provides:

"Whenever any person who shall have been adjudged mentally ill *desires* to be declared to be again of sound mind, a petition may be presented to the probate court making adjudication for a finding and order declaring that such person is at such time of sound mind."

On August 22, 1956, Eileen Cawley, wife of Robert J. Cawley, filed a petition asking for an order restoring Cawley to soundness of mind, but this was dismissed for lack of progress on September 26, 1956.

Release from a mental hospital can be legally effectuated without a court order, as is disclosed by CL 1948, § 330.35a [Stat Ann 1956 Rev § 14.825 (1)], which provides:

"The medical superintendent may discharge any patient whose discharge in the judgment of the superintendent shall not be detrimental to the public nor detrimental to the patient."

The fact that a man was adjudged mentally ill at some previous time to the date claimed in the information when a felony was committed does not oust the court of jurisdiction.

The statute* carefully guards the rights of the mentally ill charged with crime. Under the statute a petition may be filed by the accused, his attorney, or the prosecuting attorney, to determine capacity of the accused to aid and assist in the defense, and the question of insanity, either at the time of the offense or at the time of trial, is presented for in-

* CL 1948, § 767.27 as last amended by PA 1961, No 166 (Stat Ann 1961 Cum Supp § 28.967).

quiry and determination by a jury or the trier of the facts.

When Cawley was released from the hospital where he was being treated for mental illness, he was accountable for any felony or crime he might commit and subject to the court's determination of the guilt or innocence of those charged with crime. The Macomb and Washtenaw county circuit courts had jurisdiction to impose sentences, and Robert J. Cawley was legally sentenced and is not now illegally held "in custody" on parole.

Writ dismissed.

Carr, C. J., and Dethmers, Black, Kavanagh, Souris, and Otis M. Smith, JJ., concurred.

O'Hara, J., took no part in the decision of this case.