## CITY OF EAST LANSING v. DEUTSCH

1. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—PUBLIC THOR-OUGHFARES—POLICE POWER.

    Municipalities are constitutionally empowered to enact and enforce ordinances relating to municipal concerns; reasonable control of highways, streets, alleys and public places so as to insure unobstructed passage, absent discriminatory application, is a legitimate exercise of municipal police power (Const 1963, art 7, § 22).

2. MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITUTIONAL LAW—PRESUMPTION—BURDEN.

    An ordinance is presumed to be constitutional unless the contrary clearly appears, with the burden of overcoming the presumption on the one attacking the constitutionality of the ordinance.

3. MUNICIPAL CORPORATIONS—PUBLIC STREETS—USE—REGULATION.

    The method and manner of dissemination of speech or ideas in city streets is not beyond all power of the local government, but municipal power to regulate the use of public thoroughfares for ordinary activities should be sparingly exercised while the right to use public streets for business for private gain may be given or withheld.

4. MUNICIPAL CORPORATIONS—ORDINANCES—PUBLIC THOROUGHFARES—LOITERING—CONSTITUTIONALITY.

    Ordinance stating that "no person shall loiter on any sidewalk * * * or conduct himself in any public place so as to ob-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5] 37 Am Jur, Municipal Corporations § 276 *et seq.*
[2] 37 Am Jur, Municipal Corporations §§ 177, 178.
[4] 16 Am Jur 2d, Constitutional Law §§ 359, 360; 37 Am Jur, Municipal Corporations § 155.
[6, 7] 16 Am Jur 2d, Constitutional Law §§ 341–355.
[8] 53 Am Jur, Trial §§ 406, 408, 409.
[9] 53 Am Jur, Trial § 587 *et seq.*

struct the free and uninterrupted passage of the public" *held*, constitutionally valid where all interferences with the use of streets and sidewalks are not prohibited but merely those which would obstruct public passage and where, although violative acts are not precisely listed, the ordinance is sufficiently definite in its terms to inform the average, intelligent person of what conduct will subject him to penalties (East Lansing city ordinance ch II, art II, sub g).

5. CONSTITUTIONAL LAW—POLICE POWER—INNOCENT ACTS—PROHIBITION—PUBLIC WELFARE.

A legislative body has the right to make even innocent acts unlawful if these acts have a tendency to affect or endanger the public health, safety or general welfare; an ordinance prohibiting loitering which interferes with traffic on public thoroughfares is protective of public welfare and a proper exercise of municipal police power (Const 1963, art 7, § 22).

6. CONSTITUTIONAL LAW—FREEDOM OF SPEECH—PROTEST DEMONSTRATIONS—PUBLIC THOROUGHFARES—REGULATION.

The First Amendment right to freedom of speech, when exercised in protest demonstrations, does not give the the protestor a constitutional right to protest in public places in a manner which is deemed injurious to public welfare; governmental units have a responsibility to control travel on public thoroughfares and do not abridge the protestor's freedom of speech by prohibiting demonstrations that would interfere with the free flow of traffic.

7. CONSTITUTIONAL LAW—PROTEST DEMONSTRATIONS—GOVERNMENT PROPERTY—PROHIBITION.

Those engaging in protest demonstrations do not have a constitutional right to protest when and where they please and the state, no less than a private property owner, has the power to preserve the property under its control for the use to which it is lawfully dedicated.

8. CRIMINAL LAW—TRIAL COURT—INSTRUCTIONS—DIRECTED VERDICT.

While a trial court has a duty to instruct the jury on the law and make such comments on the evidence as, in its opinion, justice requires, trial courts may not properly direct a guilty verdict in a criminal prosecution even where there is no issue of fact in contest; a criminal defendant does not waive his right to trial by jury by admission of having committed the acts which constitute the offense charged nor by failure to

refute the people's evidence that he did commit the acts, and determination of guilt remains a proper function of the jury (CL 1948, § 768.29).

9. CRIMINAL LAW—TRIAL—INSTRUCTIONS—COMMENT ON EVIDENCE.
A trial court's instructions as to the law applicable to a criminal offense is binding on a jury, but comments on the evidence presented in a criminal trial do not bind the jury, nor delineate the jury's duty and must be prefaced by words which leave the jury free to disregard them in good conscience (CL 1948, § 768.29).

Appeal from Ingham, Marvin J. Salmon, J. Submitted Division 2 April 10, 1969, at Lansing. (Docket No. 5,767.) Decided August 27, 1969.

Marlene Joan Deutsch was convicted of disorderly conduct. Defendant appeals. Reversed and remanded.

*Daniel C. Learned,* City Attorney and *Julius I. Hanslovsky,* for the city of East Lansing.

*Stuart J. Dunnings, Jr.,* for defendant.

Before: J. H. GILLIS, P. J., and LEVIN and BRONSON, JJ.

BRONSON, J. Defendant, Marlene Joan Deutsch, along with several other students from Michigan State University, decided to demonstrate for passage of a fair housing ordinance which was pending before the City Council of East Lansing. Thus, on May 25, 1965, the defendant and others proceeded to the City Hall, located in the 400 block of Abbott Road, and they sat down in the street. This action completely blocked the street to all vehicular traffic.

This group of sit-in protestors refused to disperse. The mayor of East Lansing read an ordinance [ch.

II, art II, § 2–2.1, subsection (q)] and asked every-
one to remove themselves from the street.    The
protestors refused to move.    They were arrested.

Defendant Deutsch was charged with violating an
ordinance of East Lansing, namely: "Article II
Morals and Conduct; Disorderly Conduct; Section
2–2.1(q)", which reads:

"No person shall:

*    *    *

"(q) Loiter on any street or sidewalk or in any
park or public building or conduct himself in any
public place so as to obstruct the free and uninter-
rupted passage of the public."

Defendant's attorney admitted at trial that the de-
fendant and others had seated themselves in the
street in front of City Hall, and had refused to move
after the mayor read the city ordinance to them.

Defendant sought dismissal of the complaint, and
this motion was denied.    She was convicted before
a jury on May 28, 1968.    On appeal, defendant now
attacks the constitutionality of the East Lansing
ordinance, and the right of the trial judge to direct a
verdict.

Article VII of the Michigan Constitution (1963)
reads in part:

"Sec. 22.    *    *    *    Each such city    *    *    *    shall
have power to adopt    *    *    *    ordinances relating to
its municipal concerns    *    *    *    ."

"Sec. 29.    *    *    *    Except as otherwise provided
in this constitution the right of all    *    *    *    cities
*    *    *    to the reasonable control of their highways
streets, alleys and public places is hereby reserved
to such local units of government."

The home rule charter of East Lansing, § 2.1, grants
the city the power "to pass and enforce all laws,

ordinances, and resolutions relating to its municipal concerns."

Defendant does not question the authority of a city to adopt ordinances under its police power. Nor does she deny the authority of a city to prohibit nuisances or breaches of the peace. However, she does claim that when such ordinances are passed they must state clearly and precisely what actions constitute a violation of such ordinances and what penalties will be applied to a transgressor.

A statute will be presumed to be constitutional by the courts unless the contrary clearly appears, and this same presumption of constitutionality applies to a city ordinance, with the burden of overcoming the presumption being placed upon the person asserting unconstitutionality. *People* v. *Sell* (1945), 310 Mich 305; *City of Detroit* v. *Bowden* (1967), 6 Mich App 514.

The trial court, in an excellent written opinion on a motion to quash by defendant, noted:

"[T]hat the Supreme Court goes far to uphold state and city regulations that deal with offenses difficult to define, especially when they are not entwined with limitations on freedom of expression. *Winters* v. *New York* (1948), 333 US 507 (68 S Ct 665, 92 L Ed 840). But, on the other hand, the power and duty of the state to take adequate steps to preserve the peace and to protect the privacy, the lives, and the property of its residents cannot be doubted. *Thornhill* v. *Alabama* (1940), 310 US 88 (60 S Ct 736, 84 L Ed 1093).

"A penal law cannot be sustained unless its mandates are so clearly expressed that any ordinary person may determine in advance what he may or may not do. *People* v. *Sarnoff*, 302 Mich 266. To sustain such a penal law would be denying the defendant due process of law."

Defendant argues that the ordinance is an unwarranted abridgment of her freedom of speech as guaranteed by the First Amendment and is therefore unconstitutional. It is clear, however, that:

"[T]he * * * power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community. A state or city may prohibit acts or things reasonably thought to bring evil or harm to its people. 16 Am Jur 2d, Constitutional Law § 305, p. 598. See also *Kovacs* v. *Cooper, supra.*" Opinion of trial court.

In *Kovacs* v. *Cooper,* 336 US 77 (69 S Ct 448, 93 L Ed 513), the Supreme Court recognized that while city streets are a normal and logical place for the exchange of ideas through speech or expression it is not beyond all power of the local government to control the means and extent of the manner of dissemination. However, when used for ordinary purposes, this right of regulating streets and sidewalks should be sparingly exercised. *People* v. *Dmytro* (1937), 280 Mich 82.

" 'The distinction between the use by the public in the usual way for pleasure or business and as a place or instrumentality for business for private gain is fundamental. While as to the former the power to regulate must be sparingly exercised and only when necessary in the public interest, as to the latter the right to use may be given or withheld.' *Melconian* v. *City of Grand Rapids,* 218 Mich. 397, 404." *People* v. *Dmytro, supra,* at p 85.

Defendant argues that a penal law cannot be sustained unless it is so clear on its face that an ordinary person may know in advance what actions are proscribed. Defendant further states that it is the general rule that a criminal statute when applied to the situations it purports to govern must be suffi-

ciently definite in its terms to inform the average, intelligent person what conduct will subject him to penalties.

In *City of Detroit* v. *Wedlow* (1969), 17 Mich App 134, this Court said (p 137):

"In *Shuttlesworth* v. *City of Birmingham* (1965), 382 US 87 (86 S Ct 211, 15 L Ed 2d 176), the United States Supreme Court considered the constitutionality of the Birmingham loitering ordinance. In *Shuttlesworth,* the ordinance provided:

" 'It shall be unlawful for any person or any number of persons to so stand, loiter or walk upon any street or sidewalk in the city as to obstruct free passage over, on or along said street or sidewalk. It shall also be unlawful for any person to stand or loiter upon any street or sidewalk of the city after having been requested by any police officer to move on.'

"In analyzing this ordinance, the United States Supreme Court stated that the ordinance as literally read sets forth two separate and disjunctive offenses. According to the Court, the second sentence of the ordinance literally sets forth an offense complete in itself and as such is unconstitutional because a person may stand on a public sidewalk in Birmingham only at the whim of a police officer. It was upon this possible literal construction of the second sentence by the trial court that the Supreme Court reversed Shuttlesworth's conviction and remanded to the Alabama Court of Appeals.

"Despite the above literal construction, the Court noted that following the *Shuttlesworth* trial but before appeal to the Alabama Court of Appeals, the Alabama Court of Appeals, in *Middlebrooks* v. *City of Birmingham* (1964), 42 Ala App 525 (170 So 2d 424), expressly narrowed the construction of the Birmingham ordinance. Under this narrowed construction, mere refusal to move on after a police officer's request is not sufficient to support the offense. Rather there must also be a showing that the accused

obstructed free passage.   The Supreme Court approved this narrow construction by Alabama courts saying that under such a construction the ordinance would not be unconstitutional.

"In comparing the Detroit city ordinance with the Birmingham ordinance *as narrowly construed,* we find loitering to be sufficiently well defined in the Detroit ordinance so as to limit application to those persons who are obstructing free passage of pedestrians.   The ordinance does not prohibit standing on a sidewalk, but only standing on a sidewalk so as to hinder or impede pedestrian traffic.   Thus the Detroit loitering ordinance achieves its obvious regulatory purpose of keeping sidewalks clear and is not unconstitutionally broad or vague."

Similarly, the East Lansing ordinance thus narrowly construed does not prohibit all interferences with the use by others of the streets and sidewalks, but rather conduct on a street or sidewalk so as to obstruct the free and uninterrupted passage of the public.   See *Cameron* v. *Johnson* (1968), 390 US 611 (88 S Ct 1335, 20 L Ed 2d 182), *reh den* 391 US 971 (88 S Ct 1335, 20 L Ed 2d 182).

The Supreme Court of the United States stated, in regard to a Louisiana statute which prohibited the obstruction of public passages:

"The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.   The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded   *   *   *   ."   *Cox* v. *Louisiana* (1964), 379 US 536, 554 (85 S Ct 453, 13 L Ed 2d 471).

Similarly, in *City of Detroit* v. *Bowden* (1967), 6 Mich App 514, this Court recognized the right of a legislative body to make even innocent acts unlawful if these acts have a tendency to affect or endanger the public in connection with health, safety, morals or general welfare. The ordinance under which defendant was charged was enacted to protect the public safety, and is therefore within the police powers of the city of East Lansing. See *Territory of Hawaii* v. *Anduha* (CA 9, 1931), 48 F2d 171.

The crux of defendant's argument is that she had a constitutional right to block traffic in order to protest and to assemble in favor of fair housing legislation and that this purpose was protected from the dictates of the city ordinance by virtue of both the state and Federal constitutions.

Two United States Supreme Court cases have articulated the permissible bounds of protest in a manner which clearly marks appellant's behavior as illegal. In *Adderley* v. *Florida* (1966), 385 US 39 (87 S Ct 242, 17 L Ed 2d 149), *reh den* 385 US 1020 (87 S Ct 698, 17 L Ed 2d 559), Mr. Justice Black delivered the opinion which affirmed petitioner's conviction for "trespass with a malicious and mischievous intent" upon the premises of the county jail. The issue presented was whether the motive of the petitioner to protest prior arrests and city segregation policies insulated his behavior, blocking a driveway to the jail entrance, from the prohibition of the Florida trespass statute. The majority ruled that it did not.

Justice Black carefully distinguished the *Adderley* case from *Edwards* v. *South Carolina*, 372 US 229 (83 S Ct 680, 9 L Ed 2d 697), and *Cox* v. *Louisiana, supra.*

"This Court in *Edwards* took pains to point out at length the indefinite, loose, and broad nature of this

charge; indeed, this Court pointed out, 372 US, p 237 (83 S Ct 684, 9 L Ed 2d 703), that the South Carolina Supreme Court had itself declared that the 'breach of the peace' charge is 'not susceptible of exact definition.' South Carolina's power to prosecute, it was emphasized, 372 US, p 236 (83 S Ct 684, 9 L Ed 2d 702, 703), would have been different had the State proceeded under a 'precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be limited or proscribed' such as, for example, 'limiting the periods during which the State House grounds were open to the public * * *.' The South Carolina breach-of-the-peace statute was thus struck down as being so broad and all-embracing as to jeopardize speech, press, assembly and petition, under the constitutional doctrine enunciated in *Cantwell* v. *Connecticut,* 310 US 296, 307, 308, (60 S Ct 900, 904, 905, 84 L Ed 1213) and followed in many subsequent cases. And it was on this same ground of vagueness that in *Cox* v. *Louisiana, supra,* pp 551, 552, the Louisiana breach-of-the-peace law used to prosecute Cox was invalidated." *Adderley* v. *Florida, supra,* at p 42.

He concluded that the Florida trespass statute was aimed at conduct of one limited kind, and that there was no lack of notice to fool the unwary. Justice Black expressed the view that those who would exercise First Amendment rights are *not* free from laws intended to protect the legitimate concerns of the state.

"Nothing in the Constitution of the United States prevents Florida from even-handed enforcement of its general trespass statute against those refusing to obey the sheriff's order to remove themselves from what amounted to the curtilage of the jailhouse. The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the peti-

tioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this 'area chosen for the peaceful civil rights demonstration was not only "reasonable" but also particularly appropriate  *  *  *  .' Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on, *Cox* v. *Louisiana, supra,* at 554, 555 and 563, 564. We reject it again. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose." *Adderley* v. *Florida, supra,* p 47.

In *Cox* v. *Louisiana, supra,* discussed by Justice Black, students protesting segregated lunch facilities walked two abreast on a sidewalk across the street from the courthouse, 101 feet away. The group did not obstruct the street. Petitioner was convicted of disturbing the peace and of obstructing public passages in violation of state statutes.

The United States Supreme Court reversed defendant's conviction and held that his rights of free speech and free assembly had been infringed, the key to the decision being a practice in the city of allowing unfettered discretion in local officials in regulation of use of streets for peaceful parades and meetings.

Justice Goldberg, writing for the majority, defined the limits of the decision in the following manner:

"From these decisions certain clear principles emerge. The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to

express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations. See *Lovell* v. *City of Griffin* (1938), 303 US 444, 451 (58 S Ct 666, 668, 82 L Ed 949), *Cox* v. *New Hampshire* (1941), 312 US 569, 574 (61 S Ct 762, 765, 85 L Ed 1049), *Schneider* v. *New Jersey* (1939), 308 US 147, 160, 161 (60 S Ct 146, 150, 84 L Ed 155), *Cantwell* v. *Connecticut* (1940), 310 US 296, 306, 307 (60 S Ct 900, 904, 905, 84 L Ed 1213), *Giboney* v. *Empire Storage & Ice Co.* (1949), 336 US 490 (69 S Ct 684, 93 L Ed 834), *Poulos* v. *New Hampshire* (1953), 345 US 395, 405–408 (73 S Ct 760, 766–768, 97 L Ed 1105) *reh den* 345 US 978 (73 S Ct 1119, 97 L Ed 1392), see also *Edwards* v. *South Carolina* (1963), 372 US 229, 236 (83 S Ct 680, 683, 9 L Ed 2d 697)." *Cox* v. *Louisiana, supra,* p 464.

Thus defendant's argument that she was denied constitutionally protected rights must fail. Her ac-

tivity falls squarely into the area designated by Justice Goldberg as "governmental responsibility to insure this necessary order."

Defendant's remaining argument goes to the question of whether the trial judge erred when he instructed the jury that it was their duty to find defendant guilty. In his charge to the jury, the trial judge included the following:

"I instruct you further, members of the jury, that the law applied to the facts in this case, which facts are undisputed, shows the defendant to be guilty of the offense charged, and *it is your duty to so find under the facts and the law.*" (Emphasis added.)

This was error.

In *People* v. *Ward* (1969), 381 Mich 624, the trial judge instructed the jury well and thoroughly. However, he included in his instruction the statement (p 626):

" '[T]hat *it is your duty* to return a verdict of guilty in this case of either murder in the first degree or murder in the second degree unless you should find that Clarence Ward was of unsound mind at the time of the happening.' (Emphasis supplied.)"

The trial judge, in *Ward,* then concluded with the following remarks:

" 'Therefore, members of the jury, let me say to you that you have the right and it is within your province, *notwithstanding my instructions* to return any one of five verdicts, namely, guilty of murder in the first degree; guilty of murder in the second degree; guilty of manslaughter; not guilty; or not guilty because of insanity, but I say further to you, that *it is your duty* to return one of the three following verdicts and in the form hereafter mentioned, namely, murder in the first degree; murder in the

second degree; or not guilty because of insanity.'
(Emphasis supplied.)" (p 627.)

The Supreme Court, discussing the trial judge's
comments, stated:

"We hold these instructions to be erroneous.

"It is apparent that the trial judge misinterpreted
CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052),
which reads as follows:

" 'Sec. 29.  It shall be the duty of the judge to
control all proceedings during the trial, and to limit
the introduction of evidence and the argument of
counsel to relevant and material matters, with a view
to the expeditious and effective ascertainment of the
truth regarding the matters involved.  The court
shall instruct the jury as to the law applicable to
the case and *in his charge make such comment on the
evidence, the testimony and character of any wit-
nesses, as in his opinion the interest of justice may
require.*  The failure of the court to instruct on any
point of law shall not be ground for setting aside the
verdict of the jury unless such instruction is re-
quested by the accused.'  (Emphasis supplied.)

"A judge's right to comment upon the evidence is
precisely that.  It is a right to comment.  It must
be exercised in words which convey clearly to the
jury the fact that the judge is commenting rather
than instructing.  The court's charge or instructions
to the jury delineate their duty.  A jury may have
the power but it has no right to disregard the court's
instructions.  In its final words the trial court stated
flatly that it was the jury's duty to return one of
three verdicts, murder in the first degree, murder
in the second degree, or not guilty because of in-
sanity.  In his reference to the offense of manslaugh-
ter, and more importantly, a verdict of not guilty,
the court made it crystal clear that such verdicts
would be contrary to his instructions."

In *People v. Deneweth* (1968), 14 Mich App 604,
Judge Levin, in a concurring opinion, stated (p
610):

"Even if the defendant had admitted that the shots he fired caused Bernice Browski's death, he did not thereby admit his conduct was unlawful or culpable. Since the defendant did not admit that he acted criminally or culpably in raising and firing the gun, whether his actions should be so characterized was on this record an issue for jury resolution.

"II.

"Turning to the question whether it is ever proper for a judge to direct a verdict of guilty in a criminal case, it has already been observed that, in a criminal case, *except for the facts the defendant himself judicially admits, the people's evidence is disputed by the presumption of innocence which should be weighed against the people's evidence however overwhelming and even if not otherwise contradicted.*" (Emphasis supplied.)

In the present case the defendant did not take the stand on her own behalf. Whatever admissions were made were not made by defendant in sworn testimony. Defendant's main argument at trial and on appeal is that the city ordinance is unconstitutional. She does not deny sitting in the street, but rather claims a constitutional right to do so. Whatever the determination of this main issue, it nonetheless is our feeling that defendant has not waived her right to a trial by jury. On this point we are guided by the determination in *United States* v. *Taylor* (D Kan, 1882), 11 F 470, 471, 472, that:

"There can, within the meaning of the constitution, be no trial of a cause by a jury unless the jury deliberates upon and determines it.

"It is doubtless true that, in a certain sense and to a limited extent, this doctrine makes the jury the judges in criminal cases, of both law and

fact; but this is the necessary result of the jury system."*

It was incumbent upon the people to prove their case; and it was the province of the jury to decide if the people's case was to be accepted. As the Court noted in *Ward, supra:*

"The trial judge's twofold authority to instruct the jury on the law and to make such comment upon the evidence, the testimony, and the witnesses as, in his opinion, the interest of justice may require is severable and must be discharged separately. When a trial judge instructs upon the law he must do so affirmatively. So far as the jury is concerned, the law is what the judge says it is. They have the duty to follow his instructions on the law.

"As to the court's comment upon the evidence, such comments are not binding upon the jury. They do not delineate the jury's duty and they must be prefaced by words which leave the jury free to disregard them in good conscience."

Inevitably, we come to the somewhat begrudging conclusion reached in *Ward, supra,* that:

"Reluctantly, we reverse   *   *   *   . Granting presumption of validity to the judgment of convic-

---

* In *United States* v. *Taylor* the defendant was charged with the offense of carrying on the business of a retail dealer in liquors without having paid the special taxes required by law. At trial the court directed the jury to return a verdict of guilty. On appeal Judge McCrary stated:

"The single question to be determined is whether, in such a case as this, a court may direct a verdict of guilty. It is insisted on the part of the government that, the facts being admitted or settled beyond dispute, the question of guilt or innocence depends wholly upon a question of law, which the court must determine, and that, therefore, the court may direct a verdict either way, in accordance with its opinion of the law. This is the view which was taken by the court below. In so holding, the learned district judge was, no doubt, largely influenced by the ruling of Mr. Justice Hunt in the case of *United States* v. *Anthony,* 11 Blatchf 200. I find, however, upon an examination of the subject, that, with this single exception, the authorities are, with entire unanimity, against the right of a court in a criminal case to direct a verdict of guilty."

tion, and bearing fully in mind the mandate of statute prohibiting reversal absent a miscarriage of justice, it is yet impossible for this Court to conclude * * * that the error was not prejudicial."

Reversed and remanded.
All concurred.