PEOPLE v STOCKWELL

1. HOMICIDE—MURDER—DEFENSES—INSANITY—INSTRUCTIONS TO JURY.

Instructions to a jury in a murder trial which limited the jury to three possible verdicts, guilty of murder in the first degree, guilty of murder in the second degree, and not guilty by reason of insanity, were erroneous and require reversal because: (1) there is serious doubt whether it is ever proper for a trial judge to instruct a jury to find a defendant guilty, (2) a defendant's admission of the facts of a crime does not necessarily represent an admission by the defendant that he or she acted criminally or culpably, therefore, defense counsel's admission at the trial that defendant killed the victim is without effect in terms of the appropriate instructions to give the jury, and (3) there is no such thing as a plea of not guilty by reason of insanity; rather, a defendant may raise the *defense* of insanity after pleading not guilty or having such a plea entered for him.

2. HOMICIDE—MURDER—INSTRUCTIONS TO JURY—PRESUMPTION OF IN-NOCENCE—GENERAL VERDICT OF NOT GUILTY.

Instructions as a whole misled a jury in a murder trial where the jury was told on the one hand that the defendant was presumed innocent until proven guilty beyond a reasonable doubt, but on the other hand that it was barred from finding a general verdict of not guilty.

3. HOMICIDE—MURDER—INSTRUCTIONS TO JURY—GENERAL VERDICT OF NOT GUILTY—FAILURE TO OBJECT.

Reversal of a defendant's conviction of second-degree murder was required even absent defense counsel's objection to instructions to the jury which limited the jury to verdicts not including a general verdict of not guilty.

4. HOMICIDE—MURDER—MENTAL PATIENTS—CULPABILITY—STATUTES.

A civilly committed mental patient may be tried for second-degree murder before he has been certified sane and dis-

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 515, 530.

[2, 3] 40 Am Jur 2d, Homicide §§ 497, 500, 502, 509.

[4] 40 Am Jur 2d, Homicide §§ 53, 114.

charged; statutory provisions carefully guard the rights of the mentally ill charged with crime and the question of insanity, either at the time of the offense or at the time of trial, is presented for inquiry and determination by a jury or the trier of the facts (MCLA 767.27a).

Appeal from Oakland, William John Beer, J. Submitted Division 2 January 2, 1974, at Lansing. (Docket No. 16779.) Decided March 28, 1974.

Edward J. Stockwell was convicted of second-degree murder. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Appellate Counsel, for the people.

Edward J. Stockwell, *in propria persona.*

Before: Lesinski, C. J., and Holbrook and Bashara, JJ.

Holbrook, J. The defendant was admitted to Pontiac State Hospital on September 28, 1959, after the Oakland County Probate Court certified that he was mentally ill. While still institutionalized on or about May 31, 1968, the defendant stabbed a female patient at least 73 times with a knife causing her death. After a jury trial defendant was convicted of second-degree murder and on November 20, 1968, was sentenced to life imprisonment. This Court granted the defendant's application for delayed appeal June 18, 1973. We need discuss only two issues on appeal.

First, the objection is made to certain instructions the trial judge gave the jury. The trial judge instructed the jury in pertinent part as follows:

"There are three possible verdicts which you may bring to this court after due deliberation, as the counsel have so stated to you in their arguments. *Under the testimony in this case, you may find this defendant guilty of murder in the first degree; that is one verdict; or you may return a verdict of guilty of murder in the second degree; that is a second possible verdict; or, third, you may find this defendant not guilty by reason of insanity.*

"*Now, those are the only three possible verdicts.* And in the words approximately that I have given you.

"I will repeat them again: Not guilty by reason of insanity; guilty of murder in the second degree; guilty of murder in the first degree." (Emphasis supplied.)

These instructions were erroneous and require reversal of this case. In *People v Woody*, 380 Mich 332, 337–338; 157 NW2d 201, 202–203 (1968), the Supreme Court dealt specifically with the issue involved here:

"In affirming the conviction the Court of Appeals held:

" 'The plea of not guilty by reason of insanity made the issue defendant's sanity at the time of the offense, not whether he killed his wife.'

"We feel obligated to point out that any implication from the above language that in these circumstances the jury cannot bring in a general verdict of not guilty should be dispelled. This was early decided and we do not find the holding has ever been disturbed.

"In *People v Marion*, 29 Mich 31, 40–41 (1874), we said:

" 'As it is one of the most essential features of the right of trial by jury at common law, that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit, we cannot suppose the Legislature intended to introduce such a revolution into the criminal law by any indirection.'

"In *Underwood v People*, 32 Mich 1, 2–3 (1875), we approved the holding:

" 'As suggested in *People v Marion,* 29 Mich 31 (1874), one of its [trial by jury] substantial elements is the right of the jury to give a general verdict on the merits. * * * And while it is not competent to prevent an acquittal on a reasonable doubt of insanity, which would require a general verdict of not guilty, yet if the jury agree that the prisoner was insane, and that he would have been guilty if not so, they are undoubtedly at liberty, though they cannot be compelled, to find that fact specially.'

"To the extent then that the language of the Court of Appeals be read to mean the contrary, we disapprove."

In *People v Ward,* 381 Mich 624, 627; 166 NW2d 451, 452 (1969), the Supreme Court expressly rejected an instruction that read in part like the one given in this case:

"but I say further to you, that *it is your duty* to return one of the three following verdicts and in the form hereafter mentioned, namely, murder in the first degree; murder in the second degree; or not guilty because of insanity." (Emphasis in original.)

This Court has also held on a number of occasions that such instructions were erroneous. *People v Deneweth,* 14 Mich App 604; 165 NW2d 910 (1968); *East Lansing v Deutsch,* 19 Mich App 74; 172 NW2d 392 (1969); *People v Way,* 22 Mich App 473; 177 NW2d 729 (1970); *People v Thompson,* 30 Mich App 142; 186 NW2d 4 (1971); *People v Shuck,* 31 Mich App 70; 187 NW2d 433 (1971). See, also, *People v Young,* 20 Mich App 211; 173 NW2d 793 (1969).

The foundation of this rule rests on at least three different propositions. First, there is serious doubt whether it is ever proper for a trial judge to instruct a jury to find a defendant guilty. Second, a defendant's admission of the facts of a crime does not necessarily represent an admission by the

defendant that he or she acted criminally or culpably. This question must be left to the trier of fact. Defendant's counsel's admission at trial that defendant killed the victim, therefore, is without effect in terms of the appropriate instructions to give to the jury. Finally, in Michigan there is no such thing as a plea of not guilty by reason of insanity. Rather, a defendant may raise the *defense* of insanity after appropriate notice is given and after pleading not guilty to the charge or having such a plea entered for him. For analysis of these three propositions, see the discussion in *Deutsch, supra,* and the concurring opinion in *Deneweth, supra.*[1]

The record indicates that the trial judge's instruction quoted above with regard to the three possible verdicts nearly duplicates the requested instruction number 9 (save for the request to instruct on the lesser included offense of manslaughter)[2] submitted by defendant's counsel. However, defendant's counsel also asked in request number 1 that the jury be instructed on defendant's presumption of innocence. The trial judge instructed the jury on defendant's presumption of innocence as requested and instructed the jury on the burden of proof that the prosecutor needed to meet in order to prove defendant's guilt beyond a reasonable doubt. These instructions as a whole misled the jury, since it was told on the one hand that the defendant was presumed innocent until proven guilty beyond a reasonable doubt, but then

---

[1] It has also been suggested that a jury has a right in certain circumstances to ignore the law and find the defendant not guilty in the interest of what it considers a just result. *See* 16 Wayne L Rev, 605, fn 88. This rule has never been clearly adopted in Michigan. *See People v Asher,* 32 Mich App 380; 189 NW2d 148 (1971).

[2] Because of our disposition of this case we do not need reach the issue of whether the trial judge's failure to instruct on the lesser included offense of manslaughter as requested was erroneous.

on the other hand was barred from finding a general verdict of not guilty. The failure of the trial judge to correctly submit an instruction on a general verdict of not guilty to the jury may have been occasioned by the defense counsel's choice, for strategy reasons, not to have the trial judge instruct the jury on the possibility of a general verdict of not guilty, but only that of not guilty by reason of insanity.

The defendant's counsel's failure to specifically object to the trial judge's erroneous instructions does not free us of our obligation to reverse. Reversal is required even absent defendant's counsel's objection. *Thompson, supra; People v Liggett,* 378 Mich 706, 714; 148 NW2d 784, 788 (1967). We note that the trial judge commented prior to giving his instructions to the jury:

"Now, both of you understand, and I want you to understand this—*and you are protected on the record*—that the court cannot do anything, in its judgment, except to tell this jury that they have to find one of three possible verdicts, either guilty of murder in the first degree, guilty of murder in the second degree or not guilty by reason of insanity." (Emphasis supplied.)

A second objection made on appeal is that a civilly committed mental patient may not be tried for second-degree murder before he has been certified sane and discharged. This claim was negatively answered in *In re Cawley,* 369 Mich 611, 617–618; 120 NW2d 816, 819 (1963):

"The statute [now MCLA 767.27a; MSA 28.966(11)] carefully guards the rights of the mentally ill charged with crime. Under the statute a petition may be filed by the accused, his attorney, or the prosecuting attorney, to determine capacity of the accused to aid and assist in the defense, and *the question of insanity, either at the time of the offense or at the time of trial, is presented*

*for inquiry and determination by a jury or the trier of the facts."* (Emphasis supplied.)

We note that defendant's counsel petitioned on July 11, 1968, to have the defendant examined under 1939 PA 165 to determine whether or not the defendant was a criminal sexual psychopath, and that the trial judge ordered the examination on July 24, 1968. 1939 PA 165 was thereafter repealed by 1968 PA 143 on August 1, 1968. In the pleadings of this case a docket entry dated October 1, 1968, reads: "Ruling of court that psychiatric testimony null and void because law no longer in effect and defendant is not psychiatric and is able to stand trial. Trial 10-14-68." It is not clear from the pleadings whether a hearing was ever held into the alleged criminal sexual psychopathy of the defendant as was then required by 1939 PA 165 [MCLA 780.504; MSA 28.967(4) and MCLA 780.505; MSA 28.967(5)]. In any case, the defendant does not object to the results reached below under 1939 PA 165, so we find no error.

We note further, however, that MCLA 767.27a(3); MSA 28.966(11)(3) mandates that:

"Upon a showing that the defendant may be incompetent to stand trial, the court shall commit the defendant in the criminal case to the custody of the center for forensic psychiatry or to any other diagnostic facility certified by the department of mental health for the performance of forensic psychiatric evaluation."

A sound argument might be made for the proposition that a prima facie "showing that the defendant may be incompetent" is made under the above-quoted statute when the fact is verified that the defendant was institutionalized for a mental illness at the time of his alleged criminal activity. Thus, in such circumstances the trial judge would

be required on his own motion to investigate into the competency of the defendant to stand trial in accordance with the statute and GCR 1963, 786.4.

Reversed and remanded for a new trial.

All concurred.