## ELDRIDGE *v.* STATE

[No. 196, September Term, 1960.]

*Decided April 4, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert J. Dougherty,* for appellant.

*Robert C. Murphy, Assistant Attorney General,* with whom
were *Thomas B. Finan, Attorney General, Saul A. Harris*
and *Charles E. Moylan, Jr., State's Attorney* and *Assistant
State's Attorney for Baltimore City,* respectively, on the brief,
for appellee.

PER CURIAM.

Cherry Auston Eldridge was convicted of manslaughter by
a jury in the Criminal Court of Baltimore, and was sentenced
to ten years' confinement therefor.

He raises two contentions: (1) he claims there was not
sufficient corroboration of the testimony of his two accom-

plices to justify having submitted his case to the jury; and (2) that the trial court erred in failing to instruct the jury properly as to the weight and consideration that should be given to the testimony of accomplices.

## I

The appellant and two codefendants (sometimes hereinafter referred to as "the accomplices") were jointly indicted for the murder of one Robert Mayer (the deceased or victim). Appellant was tried alone prior to the trial of his codefendants, he having selected a jury trial and the others a trial by the court. At his trial, the appellant's accomplices testified against him. Briefly stated, their testimony was that a few days before the homicide the accomplices had stolen some articles of wearing apparel and desired to sell them. The deceased said he knew someone who would purchase the clothing. The deceased and the accomplices (using appellant's automobile for which he was to receive one-half of the money realized from the sale of the clothing) drove to an address suggested by the deceased. The deceased took the clothes and entered a private home, where he, presumptively, sold them, and (disregarding the time-honored adage that there should be a reasonable amount of "honesty among thieves") left the house by the back door. Several days later, the appellant and the accomplices found the deceased in a poolroom shooting pool with one Lester Bryant. The deceased immediately stopped the pool game, walked down the street with the appellant and the accomplices, and got into appellant's car with them. They drove across a viaduct, and proceeded up an alley. The appellant and deceased were "arguing about money." The car was stopped in the alley and a fight, in which all four participated, ensued. The victim managed to break away and ran up the alley, with the others in pursuit. One of the accomplices struck the deceased and he cried out, "Help, Police," whereupon the accomplices returned to the car. Shortly thereafter, the appellant returned and said that he had stabbed the victim in the back. They then went to the appellant's home, and proceeded from there to 1121 Darley Ave., where three women were living.

The appellant denied having participated in any manner in the killing. The deceased made a dying declaration in which he said that one of the accomplices had done the stabbing.

The State called Lester Bryant and he testified that the accomplices were looking for a "fence" on October 19, 1959 (the homicide occurred on October 22, 1959), that the victim told the accomplices that he thought he knew one, and the accomplices and the deceased "went off" together. He further testified that he was shooting pool with the deceased shortly before he met his death. The appellant and the accomplices came into the poolroom. The deceased stopped playing pool, and the witness watched the four men walk down the street together (apparently in the direction of the appellant's car).

The State also called the three women who were living at 1121 Darley Ave. Two of them testified on direct examination that the appellant and the accomplices came to 1121 Darley Ave. on the night of the homicide. On cross-examination, they stated that they were not certain of the date. The third woman, after testifying that the appellant and one of the accomplices came to 1121 Darley Ave., said she was not certain of the date, but thought it was on Thursday (the date of the killing).

The State also produced a witness who testified that he had overheard a conversation between the appellant and the accomplices, in which the story of the fatal stabbing was detailed substantially as it had been testified to by the accomplices.

Medical testimony disclosed that the deceased had met his death as the result of a massive hemorrhage caused by a stab wound in the back.

It would serve no useful purpose to restate the rule in regard to the *quantum* of corroboration of an accomplice's testimony that is necessary to support a finding of guilt in a criminal case, as we have quite frequently, and very recently, done so. See *Campbell v. State*, 221 Md. 80, 156 A. 2d 217. Other Maryland cases are collected in 7 M.L.E., *Criminal Law*, Section 275. We think it sufficient to say that the corroboration of the accomplices' testimony, as it has been set

forth above, was, if believed by the jury, ample to support a finding of guilt on the part of the appellant.

## II

The second question is not properly before us, because no objection was made to the court's advisory instruction to the jury. Maryland Rule 739 (g); *Kain v. State,* 222 Md. 511, 161 A. 2d 454. At the time of trial, the accused was represented by counsel other than his lawyer on appeal.

We are requested, however, to invoke the discretion vested in us by said Rule "to take cognizance of and correct any plain error material to the rights of the accused," even though not included in the assignment of errors. We do not deem the situation presented here a proper one to call for such an invocation. Counsel representing the accused at the trial neither requested an instruction from the court as to the weight, or consideration, to be given an accomplice's testimony, nor did he object to the court's not having done so. This did not prevent counsel from arguing to the jury the proper import to be given an accomplice's testimony, and it is very probable that he did so. We find nothing in the record that indicates "any plain error material to the rights of the accused."

*Judgment affirmed.*