## STRONG *v.* STATE OF MARYLAND

[No. 184, September Term, 1970.]

*Decided April 7, 1971.*

p. 377-378

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Karl H. Goodman,* with whom was *Jack B. Rubin* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred Kelly Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The appellant was convicted by a jury of murder in the first degree and sentenced to death. He seeks reversal primarily on the claim that Judge Joseph Carter's failure to instruct the jury that an accused cannot be convicted solely on the uncorroborated testimony of an accomplice was reversible error, even though he did not request such an instruction or except to the charge. He

contends that this Court can and should reverse under Maryland Rule 756 g which, although it imposes the requirements that an appellant may not of right assign an error in the instructions unless "(1) * * * the particular failure to instruct was distinctly objected to before the jury retired to consider its verdict and (2) the grounds of objection were stated at that time," goes on to provide that:

> "Ordinarily no other error will be considered by the Court of Appeals * * *, but the [Court], either of its own motion or upon the suggestions of a party may take cognizance of and correct any plain error in the instructions, material to the rights of the accused even though such error was not objected to as provided by section f of this Rule."

The appellant urges further that the verdict was fatally defective because the jury was improperly polled in that each juror did not say in so many words that the accused was guilty of murder in the first degree and, finally, that the death sentence is now unconstitutional.

The last contention was rejected by this Court in *Bartholomey v. State*, 260 Md. 504 (1971) and was not pressed at the argument in this case.

When the jury returned to the courtroom after its deliberation the clerk asked: "Is Cornelius Thomas Strong guilty of the matters wherein he stands indicted or not guilty?" The forelady replied: "Guilty. Guilty of first degree murder, the first degree." Appellant's lawyer said: "Poll the jurors" and the clerk said: "Juror No. 2, you have heard the verdict as given by your Forelady. Is your verdict the same?" Juror No. 2 replied: "Yes, it is." Each of the other ten jurors was asked the identical question by the clerk and each replied "Yes" or "Yes, it is." After juror No. 12 had answered yes, the clerk intoned:

> "Hearken to the verdict as the Court has recorded it. You say Cornelius Thomas Strong is

guilty of murder in the first degree as to Indictment 3029 of the Docket of 1969, and so say you all?"

to which, as the transcript indicates, there was a general jury response of "yes." Appellant relies on *Ford v. State,* 12 Md. 514, and *Williams v. State,* 60 Md. 402, in each of which the Court held that a new trial must be granted because in a murder case a verdict of guilty of the jury and of each juror must specify whether it is murder in the first degree or in the second degree, and in each of which, although the foreman said "guilty of murder in the first degree," each of the other eleven jurors said only "guilty." The Court in *Williams* said at page 403 of 60 Md.:

"The prisoner was entitled, as a matter of right, to a poll of the jury, and he could not be convicted, except upon the concurrence of each juror. Upon the poll, it was the duty of each juror to say for himself, whether he found the prisoner guilty of murder in the first or second degree. * * * Upon the poll in this case, there was not a single juror who, in finding the prisoner guilty, ascertained the degree of murder as required by the Code. On the contrary, the verdict was 'guilty,' and such a verdict is, as we have said, on an indictment for murder, a nullity."

In the present case it is clear to us that the requirements of the law were met. The forelady said explicitly, with repetition, that the accused had committed first degree murder and, when each juror was asked individually whether his verdict was the same as that of the forelady, he replied in the affirmative. This was the equivalent of each juror saying: "I find the accused guilty of murder in the first degree" and we are entirely persuaded that each juror knowingly and intentionally so stated when he answered "yes" or "yes, it is" to the clerk's standard question.

A synthesis of the pertinent testimony will aid in determining the answer to the appellant's primary contention. About 9:40 p.m. on October 20, 1968, a policeman found a dead cab driver slumped on the seat of his cab standing in the 4400 block of Wakefield Avenue in Baltimore. He had been shot several times in the head. On that same night the appellant, Strong, was playing cards. He lost all his money and all he could borrow from the other players who, about 9:00 p.m., became angry when the prospect of repayment seemed dim. Thereupon, Strong pulled a pistol and left, saying: "I'll pay you your money" and "I got to go and pick up some money." He returned about 10:00 or 10:30 p.m. with $13.00 which, apparently, he proceeded to lose.

Douglas Johnson, Sr., a cousin of Strong, testified that Strong came to his house on October 20 about 9:00 p.m. and "asked me to carry him up on Wakefield Avenue * * * said he didn't have any gas * * *. [W]hen we got to the 4500 block, he told me stop and park * * * [I]t was a Sun cab coming out Forest Glen Apartments. He stopped on the corner, hailed the cab, said 'Let's get in.' I looked at him. He said 'Come on.' We got into the cab." After a short drive, Strong pulled out "this long, black, twenty-two caliber [pistol]," "put it in back of the cab driver's head" and said " 'Stop right here.' Cab driver turned around, looked, said 'take my money but please don't kill me' * * *. I [Johnson] jumped out of the cab, ran, started back to my car. Before I could get back, heard the [three] shots and when I got to my car, he [Strong] was right behind me." When he left the cab, Johnson ran uphill through an area referred to by other witnesses as "wooded." Strong told Johnson in the car that "he shot the man in back of the head three times" because "he needed the money." Johnson got none of the money and until the pistol appeared did not know Strong was armed or that he planned to rob the taxi driver. He drove Strong to the house of Jo Ann Johnson, his cousin and Strong's cousin. He stayed long enough to have one drink with Strong. Johnson did not tell the police what

had occurred until they came some weeks later to question him about it.

Jo Ann Johnson testified she heard Strong and Johnson talking about a killing on the night of the murder. The following Sunday night Strong again came to her house and on that occasion "he was talking about the guy that got shot, the cab driver * * *. He said that he did it."

Mary McKnight testified that about a week after the murder Strong referred to different murders he had been involved in and asked her if she "recalled of the cab driver that had gotten killed * * * near some park * * *." She was asked: "Did he tell you who killed this particular cab driver?" and answered: "Yes. He said he did it." To identify the time of the murder Strong said he had committed, Mary McKnight was asked whether Strong mentioned the prior Sunday night when he had left the card game and come back with money. She testified that Strong had asked her if she remembered his leaving the game and then coming back, and when she had responded "Yes," "[h]e said he killed the cab driver" and that "[h]e [the cab driver] didn't have but thirteen dollars."

To prevail on his primary point Strong would have to surmount two hurdles. He would have to show that Johnson was an accomplice and, if he did this, he would have to persuade us that the trial judge's failure to instruct the jury sua sponte that Johnson's testimony had to be corroborated if there was to be a conviction was plain error material to the rights of the accused. We find that he has failed to surmount either hurdle.

The burden of showing that a witness is an accomplice is on the accused. *Campbell v. State,* 221 Md. 80, 84-85. Strong offered no evidence to controvert Johnson's testimony that he knew nothing of Strong's pistol or of his need for money or of his plans and intentions at any time prior to Strong's producing the pistol in the back of the cab, nor was there contravention of Johnson's tes-

timony that as soon as he saw the pistol he fled the cab and attempted to flee the scene. "An accomplice is one who knowingly, voluntarily and with common criminal intent with the principal offender, unites with him in the commission of the crime either as a principal or as an accessory before the fact." *Burley v. State,* 5 **Md. App.** 469, 472, citing *Watson v. State,* 208 Md. 210. *Burley* goes on to state on the same page, again relying on *Watson* as well as other authorities, that "[t]he generally accepted test as to whether a witness is an accomplice is whether he himself could have been convicted for the offense, either as principal or accessory before the fact."

We find no evidence in the record that would make Johnson an accomplice under these tests, and indeed the contention that he was an accomplice was not made until the case reached this Court. Johnson could have been found to have been an accessory after the fact but *Watson* held, as is generally held, that an accessory after the fact is not deemed an accomplice.

If it be assumed that the evidence would have permitted a finding that Johnson was an accomplice, it is established that his testimony would have to be corroborated for it to sustain a conviction. *Veney v. State,* 251 Md. 159, 168-169. The flaw in Strong's argument is that Johnson's testimony not only was fully corroborated by the testimony of Jo Ann Johnson and Mary McKnight that Strong confessed to each of them that he had killed the cab driver on the night of October 20, but their testimony of itself, coupled with the proof of the corpus delicti, would have supported the conviction. If Johnson's testimony had been stricken from consideration, the jury still could properly have found Strong guilty of murder in the first degree. We think Rule 756 should not here be invoked because the failure of Judge Carter to instruct as to the testimony of an accomplice when he was not asked so to do was not error, and certainly not error material to the rights of the accused. *Tull v. State,* 230 Md. 152.

Strong relies on the California case of *People v. War-*

*ren,* 104 P. 2d 1024, 1031-1033, for the proposition that it was prejudicial error for the trial court to fail to instruct on the matter of corroboration of the testimony of an accomplice even though there was no request that it be done. The California Court held that on the facts before it there was prejudicial error in such circumstance and it may well have been right (see *Parker v. State,* 4 Md. App. 62), but the Court also went on to cite with approval various of its own cases in which no such instruction had been given but there had been ample corroboration and the holdings had been that there had been no prejudice. We think the case before us is in the latter category.

*Judgment affirmed.*