FREDERICK JEROME HUTCHINSON *v.* STATE OF MARYLAND

[No. 580, September Term, 1978.]

*Decided March 7, 1979.*

The cause was submitted on briefs to THOMPSON, LISS and WILNER, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *George E. Burns, Jr., Assistant Public Defender,* for appellant.

Submitted by *Francis Bill Burch, Attorney General, Alice G. Pinderhughes, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Harvey Greenberg, Assistant State's Attorney for Baltimore City,* for appellee.

LISS, J., delivered the opinion of the Court.

On April 5, 1978, Frederick Jerome Hutchinson, the appellant, was convicted in the Criminal Court of Baltimore of second degree rape. On May 4, 1978, he was committed to the custody of the Division of Correction for a period of twenty years. On appeal he contends:

1. the court erred in refusing to join separate charges placed against him.
2. the State prejudiced the appellant's defense by virtue of its cross-examination of the appellant's witnesses and its closing argument.
3. the court erred in not granting a missing witness instruction.
4. the court erred in its additional instructions to the jury concerning the possible verdicts.

The twenty-year-old prosecuting witness testified that on the night of September 13, 1977, she was baby sitting at the house of a friend of her mother when the appellant, who had been going with her sister, unexpectedly came by. She said that the appellant accused her of upsetting his relations with

the woman with whom he was living and threatened her. As a result of the threats and to insure the safety of the children who were asleep, she said she did not resist his sexual advances. The next morning the prosecuting witness told her boyfriend and later that day reported to the police that the appellant had raped her. Subsequently her sister Cheryl reported to the police that the appellant had forced her to engage in oral sex with him a few days previously.

On cross-examination the prosecuting witness denied having previously had sexual relations with the appellant. In presenting a defense of consent, the appellant introduced evidence that the prosecuting witness had had sexual relations with him during the summer. In addition, Hester Seldon, the woman with whom the appellant purportedly lived, testified that she had received telephone calls, which greatly upset her, from both the prosecuting witness and Cheryl.

## 1. Refusal to Join Offenses

The appellant had been charged with offenses against both the prosecuting witness and against Cheryl. Prior to trial the appellant moved to have both cases against him joined for trial on the grounds that they arose from a conspiracy by the two sisters against him. The following colloquy then occurred:

> "THE COURT: Mr. Greenberg, do you want to respond to that?
> MR. GREENBERG: Just this, Your Honor, there are a few rights the State has, but one of them is to call whatever cases are on the docket or not to call. The State elects not to call the case of State Versus Cheryl Hooks at this time and just chooses to call the case of State Versus Wanda Briggs. I don't think the State can be compelled to call the other case.
> THE COURT: I agree with you. The motion is denied."

The appellant himself then addressed the court and pleaded

to have the charges consolidated. In repeating its denial the court said:

> "I understand you might not have wanted to have done that, but you would have had a right to severance because they would have been improperly joined, and, as I said, I cannot compel them to join two cases where, if they were joined, the joinder would be improper, and, accordingly, I will deny your motion."

On appeal the appellant contends that the court abused its discretion by not making an inquiry to determine if a joint trial was feasible. We note that Maryland Rule 745 b states:

> "If a defendant has been charged in two or more charging documents, either party may move for a joint trial of the charges. In ruling on the motion, the court shall inquire into reasons for the motion and the ability of either party to proceed at a joint trial."

While the question generally arises in the context of a request by a defendant for a severance, the same principles apply whether the request is for joinder or severance.

In the instant case we consider that the court should have conducted an inquiry into the appellant's request and it was error not to do so. Since the State has nol prossed the case involving Cheryl, the issue is now moot and amounts to harmless error.

## 2. Prosecutorial Misconduct

The appellant launches a two prong attack against the prosecutorial conduct. First he asserts that the State improperly commented, during opening and closing argument, on the fact the accused would not and did not testify. Secondly he complains that the State elicited improper testimony during the cross-examination of two of the appellant's witnesses.

While it is improper for the State to comment on a defendant's failure to testify, this does not mean that every

neutral or indirect reference that the State makes which implicitly refers to a defendant's silence is improper comment. In *Grace v. State,* 6 Md. App. 520, 522, 252 A. 2d 297, 299 (1969), we stated:

". . . the rule does not apply, where, as here, the thrust of the remark is directed toward the lack of evidence rather than pointed directly at the failure of the accused to testify."

In this case the comment during opening and closing argument was directed toward the lack of potential evidence and not at the appellant's election not to testify. The State merely called the jury's attention to the relevant importance of eyewitness' testimony over that of other witnesses. Accordingly we find no misconduct in the State's comments.

Brown, a co-worker of the appellant, testified to a different version of the appellant's relationship with the prosecuting witness than had been presented by the prosecuting witness. As to be expected, the State then attempted to impeach Brown's testimony by first eliciting from Brown a statement that the appellant was a good friend. Next the State asked whether Brown and the appellant had worked together stealing parts from their employer. Brown denied the accusation but did admit to participating in activities that the jury could have reasonably interpreted as involving the illegal sale of stolen parts.

Lee Headspeath also testified for the appellant and stated he had known the appellant since 1967. He also admitted that he had been incarcerated for nine years for a conviction of robbery with a deadly weapon. In the course of cross-examination of Headspeath, the State elicited testimony that the appellant had been incarcerated with Headspeath at the Maryland Penitentiary from 1971 through 1975.[1]

In *Bryant v. State,* 4 Md. App. 572, 580, 244 A. 2d 446, 451 (1968), we said:

"The general rule is that a witness may be cross-examined on such matters and facts as are

---

1. The propriety of that type of examination has not been made an issue. We do not consider it.

likely to affect his credibility, test his memory or knowledge, show his relationship to the parties or cause, his bias or the like."

In the instant case, the complained of questions tended to show the witnesses' relationship to and possible bias toward the appellant. As such they were the proper subject for cross-examination.

### 3. Missing Witness Instruction

After the conclusion of the presentation of evidence, the appellant requested that a missing witness instruction be given to the jury regarding the prosecuting witness' sister Cheryl. The court denied the request.

In ruling on the appellant's request for a missing witness instruction the court said:

"No one has made any effort to get her here. No one has made any effort to take her deposition. I think her absence is being made an issue when it is really not warranted. If anyone really wanted her, she could have been here or her testimony could have been, so I won't allow any of that."

The missing witness rule provides that where a party fails to call an available material witness, a presumption arises that the testimony of such person would be unfavorable to the party failing to call that witness. In this case the witness was equally available to either side but no efforts were made by either side to secure her presence. Accordingly we find no error in the court's refusal to grant a missing witness instruction.

### 4. Court Instructions Regarding Verdict

The appellant complains that the court did not advise the jury that they could find him not guilty. In reviewing the instructions to the jury, we note that the court said:

"You should not assume that the defendant is guilty merely because he is being prosecuted,

because charges have been preferred against him. The burden of proof is on the State to prove every element of the crime charged against the defendant, and the defendant is presumed innocent until proved guilty beyond a reasonable doubt. That presumption attends the defendant throughout the trial until or unless overcome by proof establishing his guilt beyond a reasonable doubt and to a moral certainty.

"While the burden is upon the State of establishing every fact material to the guilt of the defendant, including every circumstance that enters into the crime charged, beyond a reasonable doubt, that does not mean that the State must prove the defendant guilty to an absolute or mathematical certainty. It means such evidence that you would act upon in a matter involving important affairs in your life, or your business, or with regard to your property. If the evidence is such that you would act upon it in a very important matter in your own lives, then it is sufficient to convict in a criminal case.

"Evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an ordinarily prudent individual of the truth of the proposition with such force that he or she would act upon that conviction in his own or her own important affairs."

Thereafter the court instructed the jury:

"The Court will provide you with a verdict sheet to facilitate your rendering a verdict, and, if you wish, the exhibits you may take them with you as you go into the jury room.

"You may now retire to deliberate your verdicts.

"Ladies and gentlemen, one moment. Now, the verdict sheet which I will be giving you will show *two* possible verdicts, Count One guilty of rape in the first degree and Count Two guilty of rape in the second degree. You can only — If you find the defendant not guilty of rape in the first degree, then

you consider rape in the second degree. If you find the defendant guilty of rape in the first degree, then, of course, you need not consider rape in the second degree." (Emphasis supplied)

The verdict sheet listed *three* possible verdicts: (1) Guilty Rape in the first degree; (2) Not Guilty Rape in the first degree, Guilty Rape in the second degree; (3) Not Guilty.

During the course of the jury's deliberations it sent out a question asking for clarification of the difference between Rape in the first degree and Rape in the second degree. The trial judge gave an additional instruction based on the language of the statute explaining the difference between the two statutes. At no point in the additional instructions was the possibility of a Not Guilty verdict mentioned by the trial court. Subsequently the jury returned a verdict of Guilty of second degree rape. The fact that there was some confusion regarding the furnishing of the verdict sheet to the jury is evidenced by the incorrect statement of the trial judge that the verdict sheet contained *two* possible verdicts: Guilty of first degree Rape or Not Guilty of first degree Rape-Guilty of second degree Rape. This confusion was later compounded as evidenced by the disposition hearing when the matter was called to the trial court's attention in the following colloquy:

"THE DEFENDANT: Your Honor, on the date that the jury retired, you know, after your instructions, you instructed the jury that they could find me guilty of first degree rape or second degree rape. You never said anything whatsoever insofar as the instructions that they could find me not guilty. Now, I don't know what happened, but that man there, [the bailiff] — I spoke to him after the jury had retired in the hallway, and I spoke with him, I wanted to straighten that out, and he told me that there was a slip of paper that said not guilty in there that the jury had.

"THE COURT: That's correct.

"THE DEFENDANT: But it has been my experience, and I'm quite sure the record will reflect

— I also spoke with this man here from the Sheriff's Office — that it was, you know — Well, I can't tell you your duties but, you know, in fairness — in fairness to the defendant I think you should have told the jury they could have found me guilty of first degree, second degree or, if in fact they believed there was an ulterior motive, like my attorney was trying to show, that they could find me not guilty.

"THE COURT: Mr. Hutchinson, first of all, I will not disagree with you at this time, but the transcript will show they were told and they were also given a written verdict sheet. They were told in the beginning of the instructions that in order to find you guilty they must find you guilty beyond a reasonable doubt and to a moral certainty; that *if they have such a reasonable doubt, they must find you not guilty.* That is repeated throughout the instructions, and it is culminated by the verdict sheet which has not guilty on it. (Emphasis added.)

In our reading of the instructions we do not find that the trial court ever told the jury that if "they have such a reasonable doubt they must find you not guilty."

The public defender on appeal argued that the repeated emphasis of the possible guilty verdicts without mention of the possibility of a not guilty verdict prejudiced the appellant's right to a fair trial.

The state's attorney and assistant attorney general, on appeal, were also confused. Their brief states "that the trial judge advised the jury concerning the *two* verdicts on the verdict sheet." They seek to avoid the result of the confusion by suggesting that we must examine the instructions in the light of the fact that no objection was made in the court below nor was any curative instruction requested. They suggest that since we must consider the instructions in their entirety, no prejudice occurred when the entire instructions are considered. The cite as authority for these positions *Dimery v. State,* 274 Md. 661, 338 A. 2d 56 (1975). *See also Cranford v. State,* 36 Md. App. 393, 373 A. 2d 984 (1977).

We were also confused by the trial judge's statement to the jury that the verdict sheet contained two possible verdicts. In the original opinion in this case, subsequently withdrawn, we stated erroneously that the possibility of a not guilty verdict was not included on the verdict sheet furnished to the jury and considered this as one of the elements which required the granting of a new trial. Subsequent examination disclosed the fact that the not guilty verdict was included on the verdict sheet. We must at this point determine whether we will exercise the discretion reserved for us by Rule 757 h to take notice of plain error materially affecting the rights of the accused. If we find such plain error, the failure of counsel below to object is not controlling. After careful consideration we have reached the conclusion that the erroneous statement by the trial court, as to what was included on the verdict sheet, combined with the failure of the trial court to specifically state to the jury their duty to return a verdict of not guilty if they should not find him guilty of any of the charges beyond a reasonable doubt amounted to plain error and materially affected the rights of the accused. *Williams v. State,* 34 Md. App. 206, 211, 366 A. 2d 399 (1976). (Moylan, J., concurring).

In our reading of the record of this case we are convinced that the error may have contributed to the guilty verdict returned against the appellant. We, therefore, to exercise our discretion and in the interest of justice grant the appellant a new trial. Md. Rule 757 h.

> *Judgment reversed, new trial granted.*
> *Costs to be paid by Mayor and City Council of Baltimore.*