## STATE OF MARYLAND v. FREDERICK JEROME HUTCHINSON

[No. 27, September Term, 1979.]

*Decided February 25, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ██ORTH, COLE and DAVIDSON, JJ.

*Deborah K. Handel, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Thomas J. Saunders, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH, J., dissent. SMITH, J., filed a dissenting opinion at page 209 *infra,* in which MURPHY, C. J., concurs.

In this case we are asked to decide whether the Court of Special Appeals erred in concluding that the instructions on permissible verdicts contained plain error material to the rights of the defendant.

Frederick Jerome Hutchinson, defendant, was convicted by a jury in the Criminal Court of Baltimore for the crime of second degree rape. He was sentenced to serve a term of imprisonment of twenty years. On appeal to the Court of Special Appeals, the judgment was reversed and a new trial granted. *Hutchinson v. State,* 41 Md. App. 569, 398 A.2d 451 (1979). We granted the State's petition for certiorari to consider the important question presented.

The facts adduced at defendant's trial may be set forth succinctly. The prosecuting witness testified that the defendant (a boy friend of her sister) forcibly had sexual intercourse with her during a period when she was babysitting at the house of her mother's friend. The defendant did not testify at his trial but offered evidence through two witnesses to show that he and the prosecuting

witness had previously engaged in sexual intercourse and that on this occasion the prosecuting witness had also consented. He also, through his counsel, cross examined the State's witnesses in an effort to establish that the prosecuting witness had an ulterior motive in prosecuting him.

The trial judge informed counsel in advance what instructions he proposed to give. Aside from a request for a missing witness instruction, counsel voiced no objection. We set forth the relevant portions of those instructions to place the issue in proper focus:

> You should not assume that the defendant is guilty merely because he is being prosecuted, because charges have been preferred against him. The burden of proof is on the State to prove every element of the crime charged against the defendant, and the defendant is presumed innocent until proved guilty beyond a reasonable doubt. That presumption attends the defendant throughout the trial until or unless overcome by proof establishing his guilt beyond a reasonable doubt and to a moral certainty.

> While the burden is upon the State of establishing every fact material to the guilt of the defendant, including every circumstance that enters into the crime charged, beyond a reasonable doubt, that does not mean that the State must prove the defendant guilty to an absolute or mathematical certainty. It means such evidence that you would act upon in a matter involving important affairs in your life, or your business, or with regard to your property. If the evidence is such that you would act upon it in a very important matter in your own lives, then it is sufficient to convict in a criminal case.

> Evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an ordinarily prudent individual of the truth of the

proposition with such force that he or she would act upon that conviction in his own or her own important affairs.

It is a privilege of the defendant in a criminal case not to testify, and you may not entertain any inference against him because of his absence from the stand. You must base your verdicts in this case solely on the evidence, and all of the evidence you have seen and heard during the trial, and the inferences which may reasonably and fairly be drawn from that evidence.

\* \* \*

The Court will provide you with a verdict sheet to facilitate your rendering a verdict, and, if you wish, the exhibits you may take them with you as you go into the jury room.

You may now retire to deliberate your verdicts.

Ladies and gentlemen, one moment. Now, *the verdict sheet which I will be giving you will show two possible verdicts, Count One guilty of rape in the first degree and Count Two guilty of rape in the second degree. . . .* If you find the defendant not guilty of rape in the first degree, then you consider rape in the second degree. If you find the defendant guilty of rape in the first degree, then, of course, you need not consider rape in the second degree. [emphasis added].

The jury was then supplied with the verdict sheet in the following form:

Count 1—Guilty of Rape in the First Degree     ——
Count 2—Guilty of Rape in the Second Degree     ——
Not Guilty     ——

On appeal the defendant complained that the trial court had committed reversible error in failing to instruct the jury that they could return a verdict of not guilty. The State contended that because the defendant did not object, even if

there was such omission, the trial judge committed no error which was cognizable by the intermediate appellate court. However, the Court of Special Appeals disagreed and held that the omission constituted plain error requiring reversal and a new trial. We agree.

Ordinarily appellate courts will not address claims of error which have not been raised and decided in the trial court. Md. Rules 885 and 1085; *Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977). Nor will appellate review of jury instructions ordinarily be permitted under our rules unless the complaining party has objected seasonably so as to allow the trial judge an opportunity to correct the deficiency before the jury retires to deliberate.

Md. Rule 757 f provides that

> [i]f a party has an objection to any instructions, to any omission therefrom, or to the failure to give an instruction he shall make the objection on the record before the jury retires to consider its verdict and shall state distinctly the matter or omission, or failure to instruct to which he objects and the grounds of his objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.

However, § h of Rule 757 provides that an appellate court may, in its discretion, "take cognizance of and correct any plain error in the instructions, material to the rights of the defendant even though the error was not objected to as provided by section f."

The rule clearly anticipates circumstances giving rise to error which may justify an appellate court's intervention. However, the discretion conferred by § h is not exercised as a matter of course. It presupposes some inquiry by the reviewing court to determine whether the error is material to the rights of the accused, i.e., vitally affecting his right to a fair and impartial trial.

While we do not propose to set forth any fixed formula for determining when discretion should be exercised, we do

expect that the appellate court would review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention. We enumerate these factors because we feel they are ordinarily inconsistent with circumstances justifying an appellate court's intervention under § h. In our cases we have characterized instances when an appellate court should take cognizance of unobjected to error as compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.

The State urges us to interpret the rule to mean that, if the error was not objected to and could have been and probably would have been corrected if called to the trial judge's attention, no review will follow. It further suggests that our prior decisions dictate such an approach. We believe that such an absolute approach is the antithesis of the discretion authorized by the rule.

Moreover, we believe that recent opinions of this Court and the Court of Special Appeals clearly state our position in consonance with the rule. In *Squire v. State,* 280 Md. 132, the trial judge gave an instruction which placed the burden of proving self-defense on the defendant. Defense counsel did not object. The Court of Special Appeals affirmed, declining to take cognizance of the plain error because the error could have been corrected had it been called to the attention of the trial judge. This Court reversed and ordered a new trial concluding that the instructions were prejudicially erroneous under the then very recent decisions in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975) and *State v. Evans,* 278 Md. 197, 362 A.2d 629 (1976). The Court explained that because at the time of appellant's trial *Mullaney* was only several days old, the trial counsel could not be faulted for not bringing the case to the Court's attention. Moreover, the court declared that it was highly speculative that the trial judge would have granted the instructions had the case been brought to his attention for the ramifications of *Mullaney* were not then recognized.

In *Dempsey v. State,* 277 Md. 134, 355 A.2d 455 (1976), in

his instructions to the jury, the trial judge advised that he had determined the defendant's confession to be voluntary. No objection was made at trial. The Court of Special Appeals nevertheless took cognizance of the error pursuant to Rule 756 g (predecessor to Rule 757 h). This Court stated that "an appellate court may in its discretion in an exceptional case take cognizance of plain error even though the matter was not raised in the trial court." 277 Md. at 142. However, the Court then declined to consider whether the Court of Special Appeals had abused its discretion in this case because the State had failed to properly raise its claim that appellant's contentions were not reviewable.[1]

In *Fowler v. State,* 7 Md. App. 264, 254 A.2d 715 (1969), the trial judge incorrectly informed the jury that they could consider appellant's criminal record for purposes of determining whether he was guilty of the crime charged. No objection was made by counsel. Clearly, such an error could have been corrected had it been brought to the judge's attention. Nevertheless, the Court of Special Appeals, speaking through then Chief Judge Murphy, now Chief Judge of this Court, granted a new trial stating that

> [w]hile appellant's trial counsel did not make proper objection to the court's instructions ... we are permitted by Maryland Rule 756 g [predecessor of 757 h] to "take cognizance of and correct any plain error in the instructions, material to the rights of the accused," even though there was no objection to the instructions. [7 Md. App. 264 (footnote omitted)].

In *Barnhart v. State,* 5 Md. App. 222, 246 A.2d 280 (1968) the issue was the voluntariness of the confession. The trial judge properly conducted a hearing out of the presence of the jury and determined that the confession was admissible. He then informed the jury that it had a duty to independently

---

1. We perceive circumstances where the intermediate appellate court may recognize as error under Md. Rule 757 h what this Court if reviewing for the first time would conclude does not amount to error material to the rights of the accused. However, unless upon our review that court has clearly abused its discretion under the rule, we will not substitute our judgment for theirs.

determine that the confession was voluntary beyond a reasonable doubt; however, in so doing he informed the jury that the court had already made a determination that "the testimony conclusively shows that it was freely and voluntarily given." The Court of Special Appeals held that the trial judge failed to inform the jury that the standard which it was to apply (beyond a reasonable doubt) was different and more stringent than his prima facie determination. This too was the kind of omission which could have been corrected by appropriate objection and clarification.

Thus, the appellate courts of this State have often recognized error in the trial judge's instructions, even when there has been no objection, if the error was likely to unduly influence the jury and thereby deprive the defendant of a fair trial. The premise for such appellate action is that a jury is able to follow the court's instructions when articulated fairly and impartially. It follows, therefore, that when the instructions are lacking in some vital detail or convey some prejudicial or confusing message, however inadvertently, the ability of the jury to discharge its duty of returning a true verdict based on the evidence is impaired. The responsibility for avoiding such circumstance rests with the trial judge who must advise the jury on every matter stemming from the evidence which is vital to its determination of the issues before them. We hold that included in such advice should be all possible verdicts which it may return.

The error complained of by the defendant in the instant case is that the jury was not instructed that he could be found not guilty. We have examined the record and reviewed the entire charge of the trial judge to the jury and we conclude that the defendant is correct. While the trial judge instructed the jury that the State had the burden of proving every element of the crime charged, that the defendant was presumed innocent until proven guilty beyond a reasonable doubt and that no inference of guilt could be drawn from the defendant's failure to testify, nowhere in his instructions did the trial judge tell the jury that it could find the defendant

not guilty. The State's retort that the defendant did not object is to no avail. If a defendant is entitled to have a jury instructed as to all possible verdicts arising from the evidence, it seems manifest to us that he would have the right to have the jury told that it may find him not guilty.[2] We can envision no right more fundamental to the defendant in a criminal jury trial.

The State counters by contending that the verdict sheet contained all three possible verdicts, that the jury knew it could return a not guilty verdict, and hence the misstatement by the trial judge as to possible verdicts created no plain error material to the rights of the defendant. We disagree.

The State's contention fails to take into account the influence of the trial judge on the jury. The trial judge is the central figure at the trial, having the chief responsibility of steering the jury through the maze of evidence. In such role, the trial judge may influence the jury by the inflection of his voice, his words, his conduct and his assessment of the evidence, if revealed. Thus, the trial judge must remain ever vigilant in order to avoid conveying any idea as to what he thinks the jury's verdict should be or suggesting the slightest partiality.

In *People v. Glass,* 266 Cal. App. 2d 222, 71 Cal. Rptr. 858 (Ct. App. 1968), the judge first furnished complete instructions. The jury retired and then returned to the courtroom for clarification. The judge then instructed that there were three possible verdicts: (1) felony manslaughter involving gross negligence; (2) misdemeanor manslaughter; (3) not guilty. In these oral instructions, the judge omitted the possibility of a finding of guilty of the offense of manslaughter with gross negligence and recommending punishment by imprisonment in the county jail (a misdemeanor). Even though the form supplied to the jury contained all four alternatives, the appellate court reversed declaring "the oral instructions of the court, in effect, eliminated the use of the form recommending imprisonment

---

**2.** See Cool v. United States, 409 U.S. 100, 103, n.4, 93 S. Ct. 354, 34 L. Ed. 2d 338 (1972).

in the county jail." *Id.* at 862. The court in *Glass* recognized that the words of the judge were likely to be of the utmost significance in the minds of the jurors and that even though the judge did not expressly tell the jurors that they could not find according to the fourth possible verdict, its omission from his oral instructions had an immeasurable effect.

In *Commonwealth v. Edwards*, 394 Pa. 335, 147 A.2d 313 (1959) the defendant admitted that he killed the victim but asserted a defense of insanity. In his charge to the jury, the judge omitted the simple verdict of not guilty. Counsel did not object. The Pennsylvania Supreme Court reversed although the judge had informed the jury that it had to find guilt beyond a reasonable doubt. The court's stinging language is apposite to the instant case:

> To say that a judge need not charge on an indispensable requirement in the law because the defendant is assuredly guilty is to hang the accused first and indict him afterwards.

> * * *

> It is not for the Commonwealth or for the Trial Court to decide whether a basic and elementary feature of a charge should be omitted on the basis of prophetic certainty that the jury will return a verdict of guilty because of facts which seemingly are not in dispute. The law of the Commonwealth places in the hands of the jury the exclusive responsibility of deciding guilt, and the Court may not restrict the jury's possible conclusions to a number which excludes the very important one of not guilty.

Responding to the State's contention that the instructions considered as a whole were not erroneous, a contention similarly made by the State here, the court answered:

> The jury could only regard with relief the final words of the Court which charged them in words of the utmost clarity as to what they were to do. What went before merged into this absolute directive. The

Judge himself practically cancelled out what he had previously said about a possible verdict of not guilty. [*Id.* at 316-318].

Other courts have also reversed and granted a new trial where there had been a similar failure to include a simple "not guilty" charge, notwithstanding trial counsel's failure to object. *United States v. Skinner,* 437 F.2d 164 (5th Cir. 1971); *People v. Stockwell,* 52 Mich. App. 394, 217 N.W.2d 413 (Ct. App. 1974); *People v. Way,* 22 Mich. App. 473, 177 N.W.2d 729 (Ct. App. 1970); *Newman v. State,* 239 So. 2d 913 (Miss. 1970); *cf. People v. Gibbs,* 50 Mich. App. 517, 213 N.W.2d 586 (Ct. App. 1973) (charge effectively precluded not guilty verdict); *State v. Woodson,* 229 S.E.2d 254 (Ct. App. 1976) (failure to include alternative of not guilty by reason of self-defense).

In the instant case we find nothing in the record to suggest that the trial judge intended to impair the defendant's right to a fair trial; however, the omission in the instructions was an oversight material to the rights of the defendant and incapable of being cured by the verdict sheet. While it may appear absurd to some to suggest that the jurors were unaware that a not guilty verdict was a possible verdict, we have no way of knowing what effect the trial judge's omission had upon them. The erroneous instructions and the verdict sheet may well have placed the jury in such a quandary that it was unsure what its obligation to the defendant was. We cannot speculate that it rejected the infirm instruction and followed the verdict sheet which accorded the defendant the right to a not guilty verdict.

We do know that the trial judge's influence upon the jury is profound. Here, his final words which the jurors carried with them into their deliberations were that there were two possible verdicts and a not guilty verdict was not one of them. The defendant was entitled to more.

The Court of Special Appeals did not abuse its discretion in recognizing this omission as plain error.

> *Judgment affirmed; Mayor and City Council of Baltimore to pay the costs.*

*Smith, J., dissenting:*

I dissent because: (1) the decision here ignores a long line of our cases holding that an appellate court should not take cognizance of "plain error" on its own motion if the alleged error was one which could be corrected readily if brought to the trial judge's attention; (2) I believe the Court of Special Appeals abused its discretion in taking cognizance of the alleged error; (3) I believe it was made abysmally plain to the jurors that they might render a not guilty verdict; and (4) I am of the strong belief that any person with sufficient intelligence to sit on a jury would know in this instance that a not guilty verdict was permissible.

### i. The Rule on Plain Error

Long before the Court of Special Appeals came into being this Court set forth the circumstances in which it would be proper in an exercise of its discretion to note "plain error." The intermediate appellate court in determining whether or not to exercise its discretion should follow the trail blazed by this Court in days past in determining whether to exercise its discretion when criminal appeals came directly to it.

*Reynolds v. State,* 219 Md. 319, 149 A.2d 774 (1959), is directly in point. The error there was much more glaring than the error here. In that case a defendant complained that a trial judge had failed, as the Court put it, "to define and explain the offenses charged in the several counts of the indictment, particularly the difference between such counts and the meaning of the technical words and phrases used therein; and that he had a further duty to state precisely and accurately the essential elements of each offense." *Id.* at 324. The Court said further, "The State frankly admits that the trial court did not fully instruct the jury as to the particular offenses charged in the indictment, and that it did not explain the real meaning of keeping a disorderly house or the other offenses charged in the indictment." *Id.* It was first held that because the defendant failed to make timely objection to the court's instructions she was precluded from

raising the objection here. The Court then addressed the issue of "plain error." Judge Horney said for the Court:

> But the defendant, admitting that she did not seasonably object pursuant to Maryland Rule 739 f, insists that this Court should of its own motion invoke the provisions of Rule 739 g and take cognizance of and correct what she asserts is a plain error material to her rights.[1] We do not agree. In this case it is obvious that the errors complained of are such that the trial court could have — and undoubtedly would have — corrected if the defendant had interposed her objections, as she should have done, before the jury retired to consider its verdict. Cf. *Wolfe v. State,* 218 Md. 449, 146 A.2d 856 (1958), (error was such that trial court could not have corrected even if it had attempted to do so). See also *Brown v. State,* 203 Md. 126, 100 A.2d 7 (1953), (court was not afforded an opportunity to clarify or correct misleading implications). [*Id.* at 324-25.]

In *Canter v. State,* 220 Md. 615, 155 A.2d 498 (1959), Judge Henderson said for the Court:

> We have repeatedly held that even constitutional rights may be waived in the course of a trial. *Jordan v. State,* 219 Md. 36, 43; *Reynolds v. State,* 219 Md. 319, 324, (distinguishing *Wolfe v. State,* 218 Md. 449); *Jackson v. Warden,* 218 Md. 652, 655; *Briley v. State,* 212 Md. 445, 448; *Schanker v. State,* 208 Md. 15, 21; *Heath v. State,* 198 Md. 455, 464. See also *Beard v. State,* 216 Md. 302, 312. We have stated, as in the *Reynolds* case, *supra,* that Maryland Rule 739 g was designed to afford the trial judge an opportunity to correct inadvertent omissions or inaccuracies in a charge, and that we would not exercise our right to "take cognizance of and correct any plain error material to the rights of

---

1. Former Maryland Rule 739 later became Rule 756, without substantial change, and is virtually the same as present Rule 757.

the accused," of our own motion, if the alleged error was one that might have been readily corrected if it had been called to the trial judge's attention. [*Id.* at 617.]

*Wolfe v. State,* 218 Md. 449, 146 A.2d 856 (1958), is illustrative of proper application of the "plain error" rule. In that case the accused was not represented by counsel. In attempting to assist him to make a decision as to whether he should testify or remain silent, the trial judge, in the presence of the jury, said, "If you don't testify I would think that the case which the State has made out . . . would be pretty strong and substantial against you, and in support of this indictment." This Court said this "not only [was] unnecessary for the purpose intended, but such remarks could only have prejudiced rather than helped the defendant irrespective of what he thereafter did." *Id.* at 455. Judge Horney said for the Court:

> [W]e are convinced that the error — which we think was material to the rights of the defendant — was such as the court could not have corrected even if it had attempted to do so. Under such circumstances we think we must of our own motion take cognizance of and correct the plain error by awarding the defendant a new trial even though such error may not have been properly includible in the assignment of errors in this case. Maryland Rule 739 g. [*Id.* at 455.]

These concepts have been implicitly or explicitly expressed or applied or expressed and applied in a host of cases in this Court and in the Court of Special Appeals. See, *e.g., Squire v. State,* 280 Md. 132, 135-36, 368 A.2d 1019 (1977); *Dimery v. State,* 274 Md. 661, 665-79, 338 A.2d 56 (1975), *cert. denied,* 423 U.S. 1074 (1976) (Trial took place only a few weeks after the decision in *Furman v. Georgia,* 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), but before our decision in *Bartholomey v. State,* 267 Md. 175, 297 A.2d 696 (1972), in which we held that *Furman* proscribed the death penalty as it then existed under

Maryland statutes. The trial judge failed to instruct the jury in a rape case that in returning a guilty verdict it might say "without capital punishment," thereby making the maximum permissible punishment twenty years in prison. No objection was made. Defendant was sentenced to life imprisonment. After review of the cases, we declined to take cognizance under the "plain error" rule, saying that timely objection would have brought prompt correction by the trial judge. Thus, we regarded the point as waived.); *Strong v. State,* 261 Md. 371, 377, 275 A.2d 491 (1971), *modified* insofar as death penalty left undisturbed, 408 U.S. 939 (1972) (Trial court failed to give instruction to the jury relative to the requirement that testimony of an accomplice must be corroborated. We found that the testimony was fully corroborated, but observed that were it otherwise the "plain error" rule would not be invoked because no request for the instruction had been made.); *Royal v. State,* 236 Md. 443, 449, 204 A.2d 500 (1964) (Defendant said that the trial court should have cautioned the jury that it should not draw an unfavorable presumption or inference against him because he refused to testify. This Court said this contention was without merit as a reading of the advisory instruction showed, but added that no request was made for such an instruction.); *Mazer v. State,* 231 Md. 40, 47, 188 A.2d 552 (1963) (At a trial on a charge of pandering the defendant claimed that the jury should have been cautioned by the trial judge as to the amount of credence to be placed in the testimony of a State's witness, apparently a prostitute. Chief Judge Brune said for the Court, "A sufficient answer to this contention of the defendant is that, even if it were to be assumed that the defendant was entitled to such an instruction which he now says should have been given, he did not request it or except to its not being included in the charge."); *Tull v. State,* 230 Md. 152, 186 A.2d 205 (1962) (Defendant was convicted of first degree murder and sentenced to life imprisonment. He claimed the trial court erred in not properly instructing the jury on the matter of self-defense. Judge Henderson said for the Court:

> Here it is argued that this was a "plain error
> material to the rights" of the accused under Rule

756 g, in order to avoid the failure to object to the court's instructions, or to request any or further instructions, as required by Rule 885. On this point we adhere to the views expressed in *Giles v. State, supra* and the cases there cited. See also *Canter v. State,* 220 Md. 615, and *Woodell v. State,* [223 Md. 89, 162 A.2d 468 (1960)]. [*Id.* at 156.]);

*Stevens v. State,* 230 Md. 47, 50, 185 A.2d 194 (1962), *cert. denied,* 373 U.S. 940 (1963) (Defendant requested the Court to review certain portions of the advisory instructions given by the trial court to the jury. Since he had made no objection to the instructions, the Court declined to review.); *Giles v. State,* 229 Md. 370, 387, 183 A.2d 359 (1962), *appeal dismissed,* 372 U.S. 767 (1963) (The defendants were sentenced to death upon conviction of rape. Objection was made to this Court that the trial court should have instructed the jury as to the applicable law. Citing other cases, Judge Horney said for the Court, "[W]hatever other meanings the term 'plain error' might involve, it does not include appellate alleviation of such unfortunate consequences as may result from a choice of trial tactics."); *Lane v. State,* 226 Md. 81, 93, 172 A.2d 400 (1961), *cert. denied,* 368 U.S. 993 (1962) (The defendant "complain[ed] of the trial court's failure to instruct the jury that if he were convicted as a second offender, he would not be entitled to receive a suspended sentence, and that 'probation or parole would not be granted until he had served at least five years * * *' and, if convicted as a third offender, he could not receive a suspended sentence and would not receive a parole or probation until he had served at least ten years." Judge Prescott said for the Court, "The short but complete answer to the question (assuming, but not deciding, that he was entitled to such an instruction) is that no request was made of the court to so instruct the jury, nor was any objection made to the omission of the same from the court's charge." To his complaint that the trial court should have informed the jury that a program at Spring Grove State Hospital was not available to him because it apparently was designed for first offenders, the Court said its statement relative to the

earlier complaint "is a complete answer to this complaint."); *Eldridge v. State,* 225 Md. 10, 169 A.2d 421 (1961) (To a contention that the trial court failed to instruct the jury properly as to the weight and consideration that should be given to the testimony of accomplices, the Court noted that no objection was made to the Court's advisory instructions to the jury. In response to a request to take cognizance of the matter under the "plain error" rule, the Court said:

> We do not deem the situation presented here a proper one to call for such an invocation. Counsel representing the accused at the trial neither requested an instruction from the court as to the weight, or consideration, to be given an accomplice's testimony, nor did he object to the court's not having done so. This did not prevent counsel from arguing to the jury the proper import to be given an accomplice's testimony, and it is very probable that he did so. [*Id.* at 14.]);

*Martel v. State,* 221 Md. 294, 301-02, 157 A.2d 437, *cert. denied,* 363 U.S. 849 (1960); *Jackson v. State,* 214 Md. 454, 460, 135 A.2d 638 (1957), *cert. denied,* 356 U.S. 940 (1958); *Basoff v. State,* 208 Md. 643, 650, 119 A.2d 917 (1956); *Brown v. State,* 203 Md. 126, 129-30, 100 A.2d 7 (1953) (Objection was made in this Court to certain alleged erroneous jury instructions. No objection was made in the trial court. Referring to *Madison v. State,* 200 Md. 1, 9-10, 87 A.2d 593 (1952), the Court declined to review under the "plain error" rule.); *Hendrix v. State,* 200 Md. 380, 391, 90 A.2d 186 (1952); *Madison v. State, supra* (Defendant was convicted of murder in the first degree and sentenced to death. The Court was told that the reason certain questions raised on appeal were not raised in the trial court "was due to fear of prejudicing defendant before the jury by objections, especially objections which suggest guilt, *e.g.,* the right of the jury to find a verdict without capital punishment." Judge Markell said for the Court:

> The court, in its advisory charge, after saying, "There are four possibilities so far as the crime itself

is concerned, although there are five possible verdicts you can reach", and accurately stating the five verdicts, including "guilty of murder in the first degree without capital punishment", then explained the four possibilities, as far as the crime itself is concerned, *viz.,* murder in the first degree, murder in the second degree, manslaughter, and not guilty. Defendant now says that failure to mention again a verdict of guilty of murder in the first degree without capital punishment may have misled the jury and that counsel did not mention the point for fear of prejudicing the jury by suggesting defendant's guilt. In both respects defendant assumes limitless stupidity on the part of the jury. If defendant wanted mention of a verdict of guilty without capital punishment repeated, he had only to ask and the court would doubtless have repeated it. If the jury might have been prejudiced by such a request, they might have been similarly prejudiced by repetition without request. In this matter there was no error, no ruling, and we see no indication of prejudice. [*Id.* at 10-11.]

It was in this context that Judge Markell said for the Court, "Whatever 'plain error material to the rights of the accused' may include, it does not include bad guesses by counsel whether or not to object to anything done or left undone by the court." *Id.* at 10.); *Glickman v. State,* 190 Md. 516, 526-27, 60 A.2d 216 (1948); *Moore v. State,* 149 Md. 298, 300, 131 A. 452 (1925); *Ross v. State,* 24 Md. App. 246, 251-52, 330 A.2d 507 (1975), *rev'd on other grounds,* 276 Md. 664, 350 A.2d 680 (1976); *Taylor v. State,* 17 Md. App. 41, 45-46, 299 A.2d 841 (1973); and *Brown v. State,* 14 Md. App. 415, 287 A.2d 62, *cert. denied,* 265 Md. 736 (1972). In *Brown* a defendant complained because a trial judge did not include in his instruction on the law of assault that a person illegally arrested may use any reasonable means to effect his escape. No such instruction had been requested. He argued, however, that the omission was "plain error," material to the rights of the accused, and the Court of Special Appeals

should correct it, taking cognizance of it under then Maryland Rule 756 g. Judge Powers extensively discussed the rule for that court. He said, "Any error, once recognized, may be called plain error, and unless it can be held to be harmless, it must be considered as material to the rights of the accused." *Id.* at 418. He went on, however, to say, "But it is not every such error that the appellate courts will take cognizance of and correct." *Id.* He discussed the matter of discretion in the appellate courts, saying, "The line of demarcation seems to have been delineated by the Court of Appeals in two decisions, *Wolfe v. State,* 218 Md. 449, 146 A.2d 856, and *Reynolds v. State,* 219 Md. 319, 149 A.2d 774." *Id.* at 420. He quoted from *Wolfe,* after which he said for the court:

> The action of the Court in *Wolfe* indicates that when plain error material to the rights of the accused is an error of *commission* by the trial judge, that is, an error in something the judge said, the effect of which could not be overcome by additional instructions, rather than one of *omission,* or something he failed to say, the appellate court should exercise its discretion to take cognizance of and correct that error. [*Id.* at 420 (emphasis in original).]

He referred to and quoted from *Reynolds* as the converse of *Wolfe.* The court then said:

> While it may be said with some logic that the prejudicial effect of an erroneous instruction may not be fully overcome when a judge who, to the jury, is the oracle of the law, tells them that a few minutes ago he was wrong, and that the law really is something else, a defendant may be benefitted, and certainly is not hurt, when a judge, with the emphasis carried by the last word, explains, in a supplementary instruction, some point or points of law not theretofore covered.
>
> Therefore we think that as a general guide, we may say that under Rule 756 g we will take

cognizance of and correct an irremediable error of commission, but not an error of omission. Of course, the error must be plain, and material to the rights of the accused, and, even then, the exercise of our discretion to correct it should be limited to those cases in which correction is necessary to serve the ends of fundamental fairness and substantial justice.

The omission here was one which the trial court could have, and undoubtedly would have, supplied by a supplementary instruction if appellant had requested it before the jury retired to consider its verdict. *Reynolds v. State, supra.* It does not call for us to correct it now. [*Id.* at 421-22.]

*Squire* is the only one of these cases mentioned by the majority opinion. It is not authority for the action taken by the majority here because under the peculiar facts and circumstances there existing we declared, as the majority correctly puts it, "that it was highly speculative that the trial judge would have granted the instructions had the case been brought to his attention for the ramifications of *Mullaney* [*v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975),] were not then recognized," since the trial was held but a few days after the opinion came down.

The majority opinion refers to *Dempsey v. State,* 277 Md. 134, 355 A.2d 455 (1976). It does not support the action taken here. There a judge improperly told a jury that he had "found by a preponderance of the evidence that the statement [of the accused] was voluntarily made after proper warnings and that it was a voluntary statement in every regard." Judge Eldridge pointed out for the Court, "Under the Maryland procedure whereby the jury makes the ultimate decision on the voluntariness of a confession, a trial judge's comment to the jury that he has found the defendant's confession to be voluntary 'shows his opinion of a question of fact which the jury is to pass on' . . . . In light of the settled law in this State regarding the proper scope of a trial judge's comments to the jury upon evidence, it is error for the judge to disclose in the presence of the jury his finding

of voluntariness." *Id.* at 150. In other words, this is precisely the kind of issue which would taint the trial and could not have been adequately corrected at the time. However, the issue of whether the "plain error" rule should be applied was not before the Court in *Dempsey,* as the majority opinion in this case concedes. In fact, in *Dempsey* the Court referred to *Dimery* where we "comprehensively discussed the plain error doctrine." *Id.* at 142.

Is it the intent of the majority to overrule all of these cases *sub silentio*? The Court of Special Appeals likewise failed to discuss our prior holdings on the subject, which under the Constitution that court was bound to apply, or its own cases, such as *Brown,* which clearly indicate that the case at bar is not a proper one for invocation of the "plain error" rule.

The reason for these holdings is very simple. As the Court made plain in *Reynolds* and *Canter,* had the matter been brought to the attention of the trial judge, he would have corrected it and an appeal would have been avoided. Moreover, when we or the Court of Special Appeals take up as a result of direct appeal such matters which could have been raised and corrected at trial and were not raised at trial, we make possible an abuse of the judicial process by unscrupulous trial attorneys. I do not mean to imply that the trial attorney here was unscrupulous. I point out, however, that an attorney might very well sit quietly by when an obvious error of this kind arises saying to himself that if the jury in its wisdom does not acquit his client, then he has in the record a ground for appellate reversal. In the interest of sound administration of justice Hutchinson ought not be heard to complain now. If he contends that the representation by his trial attorney was incompetent, then this is one of the matters that may be placed in the balance and weighed at a later date should he invoke the provisions of the Post Conviction Procedure Act, Maryland Code (1957, 1976 Repl. Vol., 1979 Cum. Supp.) Art. 27, §§ 645A-645J.

## ii The Alleged Error

### a.

We have here a case in which the trial judge instructed the

jury that it should not assume that the defendant was guilty merely because he was being prosecuted; that the burden of proof was on the State to prove every element of the crime charged against him; that the defendant is presumed innocent until proven guilty beyond a reasonable doubt; that the presumption of innocence attends the defendant throughout the trial "until or unless overcome by proof establishing his guilt beyond a reasonable doubt and to a moral certainty"; that evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an ordinarily prudent individual of the truth of the proposition with such force that he or she would act upon that conviction in his own or her own important affairs; and that the court would provide the jury with a verdict sheet to facilitate its rendering a verdict. The words "not guilty" clearly appeared on that verdict sheet as one of the three possible verdicts which might be rendered. Although the trial judge should have said specifically to the jury that a not guilty verdict could be returned, the wording of his charge leaves no room for misunderstanding.

b.

Under Code (1974) § 8-207 (b) Courts and Judicial Proceedings Article, a person is disqualified to serve as a juror if he "[i]s unable to read, write, or understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form; [i]s unable to speak the English language or comprehend spoken English," or "[i]s incapable, by reason of ... mental infirmity, of rendering satisfactory jury service ...." I presume, therefore, that all members of the jury in this instance understood the English language, comprehended spoken English, and suffered no mental infirmity. Thus, they certainly knew that a not guilty verdict was permissible.

When the jury was impaneled its members undoubtedly took an oath similar to the following:

> You do solemnly promise or declare that you will
> well and truly try and true deliverance make

between the State of Maryland and this Traverser whom you shall have in charge and a true verdict give according to the evidence.

In my day at the trial bar when the jury had been finally selected and sworn in a case such as this, the clerk directed the accused to stand and raise his right hand. The clerk then said to the jury, among other things, that the accused stood indicted, that he had been arraigned, and "upon his arraignment, he hath pleaded, 'Not Guilty', and, for his trial, hath put himself upon his country, which country you are, so that your charge is to inquire whether he be guilty of the matter whereof he stands indicted, or not guilty."

In the small, rural county in which I tried cases I knew, by reputation at least, the jurors who were selected.[2] I can say without any equivocation, mental reservation, or secret evasion of mind in me whatever that there was not one of them who would have failed to understand that in a criminal case he had a choice between finding a defendant guilty or not guilty.[3] I find it difficult to believe that the average level of intelligence of jurors in Baltimore City is so much below the average level in Caroline County that the jurors in this case were so ignorant and uninformed that they did not know that they might return a not guilty verdict. In the words of Judge Markell for the Court in *Madison,* 200 Md. at 11, the majority appears to assume "limitless stupidity on the part of the jury." I regard it as ludicrous to suggest that in this case the jury was so overwhelmed by the presence of the judge that an

---

**2.** The manner of jury selection then prescribed by Maryland Code of Public Local Laws (1965) Art. 6, §§ 266-67; my own extensive involvement in civic, fraternal, veterans', religious, and political affairs of the county, and the method I used in my office in going over jury lists in advance of trial of each case caused me to know the reputation of the relatively few prospective jurors with whom I was not personally acquainted. In the later days of my practice it was customary for me to discuss the jury list with three of the highly intelligent secretaries I had in my office. I resided at the southern end of the county. One of them, who began working in Denton law offices in the early 1920's, resided in the center of the county. The other two resided in the northern part of the county. Among us we knew virtually everyone who went on a jury.

**3.** My participation in criminal trials was always on the defense side of the trial table.

injustice was done here by the failure of the judge to mention more explicitly that a not guilty verdict might be returned.

### iii

The majority would do well to reflect upon what we said in *Dimery:*

> We must not lose sight of the admonition of Mr. Justice Frankfurter in his concurring opinion in *Johnson v. United States,* 318 U.S. 189, 202, 63 S. Ct. 549, 87 L. Ed. 704 (1943), that we should not "turn a criminal appeal into a quest for error." It is much easier to think and to pick out errors in the isolation of an appellate bench and the seclusion of an appellate judge's chambers than it is to think in the heat and tension of a jury trial .... As every bleacher fan and every Monday morning quarterback knows, it is easy to second guess any given situation. We are of the opinion that the sound rule to follow, the rule which protects the rights of litigants, but at the same time serves the orderly administration of criminal justice, is that we will not take cognizance under Rule 756 g of an error such as that concerning which complaint is made here. Dimery was represented by competent and conscientious counsel. We have no doubt that a timely objection would have brought prompt correction by the trial judge. There having been no such objection, we regard the point as waived, recalling the words of Judge Markell in *Madison v. State,* 200 Md. 1, [87 A.2d 593 (1952)]:
>
>> "Whatever 'plain error material to the rights of the accused' may include, it does not include bad guesses by counsel whether or not to object to anything done or left undone by the court."
>> *Id.* at 10.
>
> [*Id.* 274 Md. at 678-79.]

The majority also would do well to reflect upon that which

Mr. Justice Cardozo said for the Court in *Snyder v. Massachusetts,* 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934):

> The law ... is sedulous in maintaining for a defendant charged with crime whatever forms of procedure are of the essence of an opportunity to defend. Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true. [*Id.* at 122.]

It is our bounden duty to do equal justice under the law between the litigants before us. The litigants in this instance are the State, on behalf of all the people of Maryland, on the one hand, and Hutchinson on the other. In my opinion the majority in its haste to protect the rights of this litigant has overlooked the fact that the people also have some rights. It has improperly balanced the scales of justice. It has failed "to keep the balance true."

I am of the view that the Court of Special Appeals abused its discretion. Hence, I would affirm the conviction.

Chief Judge Murphy has authorized me to say that he concurs in the views I have expressed.